CONTINENTAL INSURANCE CO. and Linden Apparel Corporation, Appellants,

v.

Elsie Lorene DOWDY, Appellee.

Supreme Court of Tennessee.

Jan. 16, 1978.

**620**

H. T. Finley, Parker, Nichol & Finley, Nashville, for appellants.

Tommy E. Doyle, Humphreys, Townsend & Doyle, Linden, for appellee.

## OPINION

HENRY, Chief Justice.

This is a workmen's compensation case. The employer appeals from an award in favor of the employee for temporary partial disability and medical expenses.

### I.

Appellee, Lorene Dowdy, a fifty-four year old woman with an eighth grade education, had worked for appellant, Linden Apparel Corporation, as a sewing machine operator for several years. She was assigned to various jobs, and on the date of her injury she had been engaged in sewing pockets on high-back overalls for about a month. This job required appellee to handle bundles of forty-eight pairs of overalls. She would reach back with her left hand, remove each pair of overalls from the bundle, turn the overalls over, sew on a pocket, and fling the finished pair onto a rack with a backward motion of her left arm.

While appellee was tossing a pair of overalls onto the rack on December 10, 1974, she experienced a pain in her upper left arm and shoulder. After her lunch break, appellee told Charles Harper, manager of the Linden Apparel plant, that she had "done something" to her arm and "it was killing" her.

Appellee continued to work as best she could the rest of the day and until the end of the next week, when her Christmas vacation began. Thinking that her pain would lessen and her condition would improve, appellee delayed going to a doctor until December 27, 1974, when she was examined by Dr. B. L. Holladay. Dr. Holladay diagnosed her problem as bursitis in the left shoulder. Over the next two months, appellee was under the care of Dr. Holladay and his associate Dr. Elrod, who hospitalized appellee for her condition for a week in the latter part of January 1975. During the months of treatment, appellee would call Harper to tell him that she had visited the doctor and was unable to return to work.

Appellee's condition improved during her hospitalization, and she returned to work on March 6, 1975. She was assigned to sew pockets on overall bibs, lighter work than that she had been performing on December 10. On April 18, appellee was temporarily laid off. Two weeks later Harper called and offered her the job of cross-stitching galluses. Because this work would strain her injured arm, appellee informed appellant that she was unable to take the job and asked for lighter work. She was then told that this was the only work available and has not worked since April 18, 1975.

On July 13, 1976, appellee, still troubled by pain in her arm, visited Dr. Earl Salhany, an osteopathic physician who had treated her on prior occasions. Dr. Salhany concluded from appellee's subjective history and objective symptoms that she was suffering from an injury to the muscles that rotate the left arm.

## II.

Review in workmen's compensation cases is confined to a determination of whether there is any material evidence to support the trial court's judgment. *Giles County Board of Education v. Hickman*, 547 S.W.2d 944 (Tenn.1977). Keeping this rule in mind, we examine appellant's assignments of error.

■ Appellant first asserts that the trial judge erred in finding that the employer had notice that appellee had been injured and knowledge that she was receiving medical treatment. The record shows that appellee informed the plant manager, Harper, on December 10, that she had hurt her arm and was in pain. It also reveals that she telephoned Harper to explain that she was unable to return to work because her doctors would not allow her to come back. The trial judge's finding that appellant had actual knowledge of appellee's injury and medical treatment through its plant manager is supported by material evidence. This assignment of error is overruled.

■ Appellant also contends that the trial court disregarded the only competent medical evidence, Dr. Holladay's testimony, and erred in giving probative value to the testimony of Dr. Salhany.

In its contention that Dr. Salhany's testimony was not competent, appellant relies upon *Reynolds v. Liberty Mutual Insurance Co.*, 496 S.W.2d 890 (Tenn.1973). In *Reynolds*, the doctor whose testimony was not competent had relied entirely upon the employee's subjective complaints in determining the degree of disability. He did not take or examine any X-rays and did not investigate the employee's past history or consult with other physicians.

In the present case Dr. Salhany x-rayed, measured, and examined appellee in addition to considering her subjective complaints. He had treated appellee before. The fact that Dr. Salhany noticed few objective signs of injury is important in evaluating his testimony but does not destroy its probative value. *Wright v. Prudential Insurance Co. of America*, 551 S.W.2d 697 (Tenn.1977).

In any event, Dr. Holladay conceded that a muscle injury in the region of the bursa could cause bursitis, that the cause of bursitis is unknown, and that appellee could have simultaneously incurred both bursitis and a muscle injury. Appellant's assignments of error regarding the medical testimony are overruled.

Appellant next insists that there is no proof that appellee suffered an "injury by accident" as defined in Sec. 50–902(d), T.C.A.

■ An accident is an unexpected event, not designed although the act involved in the accident was intentional. An accident is not reasonably to be anticipated and is produced by an "unusual combination of fortuitous circumstances." *Brown Shoe Co. v. Reed*, 209 Tenn. 106, 114, 350 S.W.2d 65, 69 (1961). Where the usual strain or exertion of work causes an unusual result, such an injury is "by accident" under sec. 50–902(d). *A. C. Lawrence Leather Co. v. Loveday*, 224 Tenn. 317, 455 S.W.2d 141 (1970).

■ In the case under consideration the evidence reveals that appellee had recently assumed a new job involving "heavier" work than she had engaged in before. She was performing the usual action of flinging a pair of overalls onto a rack when struck by a sudden pain. The facts of this case are similar to those in *Modern Upholstered Chair Co. v. Russell*, 518 S.W.2d 519 (Tenn. 1974), in which the plaintiff suffered a back injury as the result of new and more strenuous duties. In this case, also, there is medical testimony sufficient to support the trial judge's finding of a causal connection between appellee's injury and her work. *See Great American Indemnity Co. v. Friddell*, 198 Tenn. 360, 280 S.W.2d 908 (1955).

■ Appellant complains that the proof shows that appellee quit her job voluntarily and that there is no proof that she is disabled. The record reveals that appellee's departure from her job was not voluntary. In addition to the medical testimony, appellee's testimony concerning her disability and her inability to work also supports the trial judge's finding on this question. *Gregory Co. v. Durdin*, 537 S.W.2d 701 (Tenn.1976). Although appellant argues that appellee is in reality disabled as the result of some unknown mysterious disease, there is material evidence to support the trial court in its findings.

Appellant last attacks the trial court's computation of disability. The final decree of the trial judge reads:

> The Court further finds that the Plaintiff has earned as much as she was able to earn under the circumstances since December 10, 1974, and that she is entitled to be compensated for temporary partial disability based upon sixty-six and two-thirds percent (66⅔%) of the difference between [her weekly wage] and . . . the amount actually earned from December 10, 1974, to January 18, 1977, being the sum of Four Thousand One Hundred Twenty-three and 94/100 Dollars ($4,123.94).

Earlier the Memorandum of the Court had stated that

[if] the parties are unable to agree upon the facts necessary to make this computation, the case will be set for further hearing in that respect.

■ First, appellant claims that the trial judge computed disability not under Sec. 50–1007(b) for temporary partial disability but under 50–1007(a) for temporary total disability. A reading of the trial judge's findings and a comparison of subsections (a) and (b) of Sec. 50–1007 leads to the obvious conclusion that the trial judge was following Sec. 50–1007(b).

■ Second, appellant argues that the trial judge left it to the parties to set the percentage of disability and erred in not finding the percentage of disability himself. It is clear that the trial judge meant for the parties to determine "the amount actually earned" by appellee from the date of her injury to the date of the trial. This was "necessary to make [the] computation" of compensation due. The trial judge did not ask the parties to set the percentage of disability. Likewise, the appellant is mistaken in its insistence that the trial judge must set a percentage of disability in all cases of temporary partial disability. Under Sec. 50–1007(b) the trial court makes its computations using the amount the employee is able to earn in his partially disabled condition, in this case the amount appellee actually earned.

Appellant's assignments of error are overruled, and the judgment of the trial court is affirmed.

FONES, COOPER, BROCK and HARBISON, JJ., concur.