IN THE SUPREME COURT OF TENNESSEE
AT JACKSON
April 3, 2001 Session

## DOROTHY WILKINS v. THE KELLOGG COMPANY

**Appeal from the Circuit Court for Shelby County**
**No. 91639T.D.    John R. McCarroll, Judge**

---

**No. M1999-00676-SC-R3-CV - Filed July 3, 2001**

---

ADOLPHO A. BIRCH, JR., J., filed a dissenting opinion, in which William M. Barker, J., joined.

The majority holds that the difference between pre- and post-injury wages for an employee whose weekly wage fell from $1,433.82 to $860.80 is $0. This holding, in my view, contravenes legislative intent, creates the potential for abuse of the benefit scheme, and muddles benefit calculation. In order to more effectively promote the Worker's Compensation Act's intended objectives and clarify benefit calculation, I would define "wage" in the temporary partial disability provision to mean "average weekly wage," not "hourly rate of pay." Accordingly, I respectfully dissent.

The intended purpose of the Act is to reimburse employees for the financial consequences of workplace injuries. See Betts v. Tom Wade Gin, 810 S.W.2d 140, 142 (Tenn. 1991) ("[T]his Court must interpret [the Act] in a manner designed to protect workers and their families from the economic devastation that . . . can follow on- the-job injuries."). In common-sense terms, when a work-related injury harms an employee financially, the Act provides relief by offsetting the reduced earning capacity caused by the injury. The majority decision to define "wage" as "hourly rate of pay" when calculating temporary partial disability benefits undermines this principle because hourly rate of pay, unlike average weekly wage, is not a reliable indicator of the economic impact of a workplace injury.

An example illustrates the lack of correlation between the economic impact of an injury and hourly rate of pay:

Two employees, A and B, work 40 hours per week and are each paid $10 per hour, a weekly wage of $400. Both sustain injuries which render them temporarily, partially disabled, and both are assigned light duty work. A is paid a light duty rate of $5 per hour and works 40 hours per week, while B continues to receive $10 per hour but receives only 20 hours per week of light duty work.

A and B both have suffered an identical weekly economic loss of $200 because of their injury. Under the majority holding, however, B receives no benefits because B's hourly pay remained unchanged, whereas A receives $133.33 per week because A's hourly pay was reduced. Even though the two injuries have caused the same financial consequences, the results are markedly different. Under the majority holding, the benefits an employee receives depend not upon the economic impact of an injury but upon employer decisions regarding pay rates for light duty work. This surely is not the result the legislature intended. Temporarily partially disabled employees who suffer financially because they work fewer hours are no less deserving of compensation than those who work full time at lower rates of pay. In my view, a result which differentiates so arbitrarily between similarly-situated employees seems contrary to our duty to uphold the equal protection of law.

The majority holding creates the potential for abuse by employers. Again, an example may be instructive:

> E works 40 hours per week at $10 per hour, a weekly wage of $400. A work-related injury renders E temporarily partially disabled. E's employer assigns E ten hours per week of light duty work. E receives the same hourly pay, $10 per hour, but loses 30 hours of work time, a weekly loss of $300. Had E been totally disabled for the same period, he would have received $266.67 (66 2/3 percent of $400) per week in benefits, but because he is working ten hours a week at his pre-injury hourly rate he is not entitled to benefits.

Under the majority holding, E's employer has a strong incentive to offer small amounts of light duty work to avoid paying benefits. If E accepts the light duty assignment, he will suffer financially; if he refuses, it may jeopardize his job. By the simple expedient of assigning partially disabled employees fewer light duty hours but leaving hourly pay rates unchanged, employers can avoid liability for benefits. This Court should not encourage such results.[1]

The majority implies that its holding is compelled by the "obvious meaning" of the statute's terms. See majority op. at ___ (citing Pollard v. Knox County, 886 S.W.2d 759, 760 (Tenn. 1994)). But the meaning of "wage" in the statute is not obvious. Indeed, the majority conclusion is not

---

[1]The majority asserts that basing benefits on average weekly wage would cause employees like Wilkins to receive a "windfall" because temporary partial disability benefits might sharply exceed temporary total disability benefits. This assertion, however, is not convincing. The majority notes that Wilkins's benefits would have been subject to a maximum weekly benefit "cap" of $454.13 had she received temporary total disability benefits. Because Wilkins's weekly wage already exceeded this cap, it argues, benefits based on average weekly wage would unfairly result in disproportionate benefits. This conclusion, however, fails to consider that the temporary partial disability provision states that it is "subject to the same maximum as stated in [the temporary total disability provision]." Tenn. Code Ann. § 50-6-207(2)(1997). Were the Court concerned that Wilkins would receive a "windfall," it could prevent such a result, with fewer policy ramifications, by holding that the employee's light duty wage plus the temporary partial disability benefits paid by the employer cannot exceed the maximum statutory benefit for temporary total disability.

supported by precedent, and it tends to contradict statements made by this Court in prior cases. In Continental Insurance Co. v. Dowdy, for example, this Court upheld the trial court's award of temporary partial disability benefits based upon 66 2/3 percent of the difference between the employee's weekly wage and the amount the employee earned after her injury. See 560 S.W.2d 619, 622 (Tenn. 1978).

Likewise, in McCracken v. Rhyne, upon which the majority relies, the Court interpreted "wage at the time of the injury" in the then-existing permanent partial disability benefits provision[2] not to mean hourly rate of pay, but average weekly wage immediately preceding the injury (rather than the average for the entire year). 264 S.W.2d 226, 227 (Tenn. 1953) (noting that McCracken's average weekly wage for a 52-week period was $33.22, but his average weekly wage immediately preceding his injury was $42.80).[3] Critical to the rationale of McCracken was that average weekly wage at the time of the injury, as opposed to the yearly average weekly wage, better measured "the effect of [work-related] injuries on the earning capacity of the employee." Id. at 228. As the majority states, "it is difficult to see why the result in Wilkins's case should be any different." Majority op. at ___.

Admittedly, the statute's literal language refers to "wage" instead of "average weekly wage." But other provisions of the Act suggest that the legislature intended temporary partial disability benefits to be based on average weekly wage. The use of phrases such as "wage of the worker at the time of the injury" instead of "average weekly wage" is not unique to the temporary partial disability provision. The phrase "wage received at the time of the injury" appears in the permanent total disability provision, Tenn. Code Ann. § 50-6-207(4)(A)(i)(1977). There, however, it is clear that the legislature intended to refer to average weekly wage, for the provision later mentions average weekly wage in its discussion of maximum and minimum weekly benefits. Reading the two sections together, it appears that the legislature used "average weekly wage" and "wage at the time of the injury" interchangeably.

Finally, today's holding will prove confusing for the trial judges who will be asked to apply it. Certainly, benefits calculation is straightforward where an employee is paid a lower hourly rate for light duty work but continues to work full time. In such a case, the court simply awards two-thirds (66 2/3 percent) of the difference between the pre-injury hourly rate and the post-injury hourly rate, presumably multiplied by the number of hours worked. If the employee receives a lower hourly

---

[2]Notably, McCracken's holding that average weekly wage does not apply to permanent partial disability benefits for non-schedule injuries has been legislatively overruled. See Tenn. Code Ann. § 50-6-207(3)(2) (noting that permanent partial disability awards, including those apportioned to the body as a whole, are based on 66 2/3 percent of the employee's average weekly wage). The legislature's amendment of the statute after McCracken lends support to the contention that average weekly wage should be deemed the intended basis for computation of all disability benefits.

[3]Ironically, the reason McCracken's average weekly wage was higher immediately before his injury was because he was working overtime hours when he was injured. McCracken, 264 S.W.2d at 227. Thus, McCracken's holding was crafted to take overtime wages into account, whereas the majority holding ignores the financial consequences of lost overtime pay.

rate of pay for light duty work and works fewer hours, however, many questions arise. Are benefits based on the employee's full-time hours, or is the reduction in hours worked taken into account? If the reduction in hours is considered in such a case, why is Wilkins's loss of twenty hours per week irrelevant? Are overtime hours simply ignored when calculating benefits? If so, what is the statutory justification for treating overtime hours differently?[4] These questions remain unanswered and will necessitate future clarification by the Court.

For the foregoing reasons, I would hold that "wage" should be defined in Tenn. Code Ann. § 50-6-207(2) to mean average weekly wage. The use of average weekly wage as the basis for benefit calculation would better achieve the results intended by the legislature, would ensure that employees are fairly compensated for the economic impact of work-related injuries, and would ensure clarity and fairness in the calculation of temporary partial disability benefits. Because the majority opinion fails to accomplish any of the above-enumerated ends, I respectfully dissent.

I am authorized to state that Justice Barker joints in this dissenting opinion.

_____
ADOLPHO A. BIRCH, JR., JUSTICE

---

[4]The majority also fails to explain why Wilkins is ineligible for benefits under its own holding. Wilkins was paid a higher hourly rate for her overtime work, which she lost as a direct result of her work-related injury. The majority's conclusion that Wilkins is not entitled to benefits fails to account for the difference between the overtime rate of pay Wilkins was earning prior to her injury and the hourly rate she earned in her partially disabled condition.