IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 15, 2010 Session

## JANE DOE and JOHN DOE v. WALGREENS COMPANY, ET AL.

**Direct Appeal from the Circuit Court for Shelby County**
**No.  CT-002912-08      Robert L. Childers, Judge**

---

**No. W2009-02235-COA-R3-CV - Filed November 24, 2010**

---

This is an appeal from the grant of Appellees/Defendants' Tenn. R Civ. P 12.02 motion to dismiss.  Appellant Jane Doe, who is HIV positive, was employed by Appellee Walgreens.  In an effort to keep her medical condition private, Ms. Doe had her prescriptions filled at a Walgreens location other than the one at which she worked; therefore, Ms. Doe was also a customer of Walgreens.  A co-worker of Ms. Doe's accessed Ms. Doe's prescription history in the Walgreens' database, and then disseminated her medical information to other co-workers and to Ms. Doe's fiancé.  Ms. Doe and her fiancé filed suit.  The trial court dismissed the lawsuit, finding that the Does' exclusive remedy was under the  workers' compensation act.  Finding that the injuries sustained by Ms. Doe do not arise out of her employment with Walgreens, and that she has sufficiently pled causes of action outside workers' compensation law, we reverse the order of dismissal and remand.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

J. STEVEN STAFFORD, J. , delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

David A. Stowers and Coleman W. Garrett, Memphis, Tennessee, for the appellants, Jane and John Doe.

Leland M. McNabb and Courtney S. Vest, Memphis, Tennessee, for the appellees, Walgreens Company, Paris Ghoston and Dr. Grady Saxton.

## OPINION

At the time of the incidents giving rise to the instant appeal, Jane Doe worked as a

pharmacy technician for the Walgreens store on Winchester Road in Memphis. Ms. Doe's direct supervisor was the manager of the pharmacy, Dr. Grady Saxton. Jane Doe, who is HIV positive, was also a customer of Walgreens but had her prescriptions filled at a different Walgreens store in Memphis. Ms. Doe avers that she did so in order to maintain privacy concerning her medical condition.

Walgreens maintains a secure database, and customer information is only authorized to be accessed in conjunction with filling a customer's prescription. According to the Complaint, on August 24, 2004, Dr. Saxton informed Ms. Doe that he had overheard other employees discussing Ms. Doe's HIV status. That same day, Dr. Saxton also allegedly telephoned Ms. Doe's fiancé, John Doe (together with Jane Doe, "Plaintiffs," or "Appellants") and informed Mr. Doe of Ms. Doe's condition.[1] Four days after Dr. Saxton made this call, Ms. Doe's co-worker, Paris Ghoston (together with Walgreens and Dr. Saxton, "Defendants," or "Appellees") allegedly admitted that she had accessed Walgreens' database in order to confirm Ms. Doe's HIV status. As a result of the exposure of her HIV status, Ms. Doe's co-workers, including Ms. Ghoston, allegedly withdrew their agreement to participate in Ms. Doe's wedding (as bridesmaids). Jane Doe subsequently terminated her job at Walgreens based upon the alleged adverse treatment she received as a result of the fact that her HIV status had been exposed.

On June 13, 2008, Ms. Doe filed a complaint against Walgreens, Dr. Saxton, and Ms. Ghoston.[2] The Complaint provides, in pertinent part, as follows:

> 8. On or about January 2002, Jane Doe was employed by Walgreens as a pharmacist technician at its store located [on] Winchester [Road], Memphis, Tennessee.
>
> 9. Walgreens, to protect the privacy of its HIV positive pharmacy patients and customers, maintained a secure database open only to those employees who serviced these particular patients and customers and who had a business reason to know the medical status of these individuals.
>
> 10. Plaintiff, Jane Doe, during the entire course of her

_____

[1] It is unclear from the record whether John Doe was aware of Ms. Doe's HIV status prior to Dr. Saxton's phone call.

[2] The Complaint does not indicate whether Dr. Saxton and Ms. Ghoston are being sued individually, or as employees of Walgreens.

employment with Walgreens, was HIV positive.

11. Plaintiff, Jane Doe, in an attempt to remove the need to know for employees who worked at her store location, had her prescriptions filled at the Walgreens store located at 3177 S. Perkins, Memphis, Tennessee.

12. At all times pertinent to this action Plaintiff Jane Doe was enrolled as a State of Tennessee Tenn Care recipient for prescription and medical care. Defendant Walgreens accepted payment for Jane Doe's prescriptions from said state program.

13. Plaintiff Jane Doe wished to and expected to keep her HIV status secret and confidential from her co-employees and the public.

14. Dr. Saxton, who at all time pertinent herein, was a registered pharmacist, licensed by the State of Tennessee, was also a full time employee of Walgreens. Moreover, Dr. Saxton was the immediate supervisor of Plaintiff Jane Doe at the Walgreen's store [where she worked].

15. On or about August 24, 2004, Dr. Saxton, without medical or legal justification, and without it being job related or a business necessity, telephoned Plaintiff Jane Doe's fiancé and informed him of Plaintiff Jane Doe's HIV status.

16. On or about August 24, 2004, Dr. Saxton stated to Plaintiff[] that he overheard other employees, who without medical or legal justification or without it being job related or a business necessity, discussing her HIV status.

17. On or about August 28, 2004, Ghoston stated to Plaintiff that she deliberately accessed Walgreens' database to[] review Jane Doe's file to ascertain her medical condition.

18. On or about September 4, 2004, Defendant Ghoston and another pharmacy department employee who agreed to [be] bridesmaids in Jane Doe's wedding, abruptly dropped out of the wedding, without explanation after the dissemination of

information regarding Jane Doe's HIV status.

19. On or about February 24, 2005, Plaintiff Jane Doe filed a health information privacy complaint against Walgreens with the United States Department of Human Services Office for Civil Rights (OCR), pursuant to the Health Information Portability and Accountability Act (HIPPA).

20. As a result of Defendants' exposure of Plaintiff's HIV status to Walgreens' employees and the public, Plaintiff Jane Doe, on or about September 2004, was forced to terminate her employment with Walgreens.

## CAUSES OF ACTION
## COUNT 1
## DISCLOSURE OF INFORMATION OF PATIENT
## AS PROHIBITED BY T.C.A. §63-10-412

\*                             \*                             \*

22. Defendants by their acts and omissions failed to protect the privacy and confidentiality of Plaintiff's HIV status and thus violated state law:

*T.C.A. Section 63-2-101 Release of medical records*
> *(2) Except for any statutorily required reporting to health or government authorities and except for access by an interested third-party payer or their designees, for the purposes of utilization review, case management, peer reviews or other administrative functions, the name and address and other identifying information of a patient shall not be divulged. The name and address and other identifying information shall not be sold for any purpose. Any violation of this provision shall be an invasion of patient's right of privacy.*

23. As a result of the violation of Plaintiff Jane Doe's right to privacy as alleged above, Plaintiffs have suffered extreme embarrassment and humiliation, great emotional distress, mental

anguish, loss of income, and loss of enjoyment of life.

## COUNT II
## DISCLOSURE OF INFORMATION OF TENN CARE
## PATIENT AS PROHIBITED BY T.C.A. §10-7-504

\*                          \*                          \*

25. Defendants by their acts and omissions failed to protect the privacy and confidentiality of Plaintiff's HIV status and thus violated the following state law:

*T.C.A. Section 10-7-504–(a)(1). The medical records of patients in state, county, and municipal hospitals and medical facilities and the medical records of persons receiving medical treatment, in whole or in part, at the expense of the state, county or municipality, shall be treated as confidential and shall not be open for inspection by members of the public.*

26. As a result of the violation of Plaintiff Jane Doe's right to privacy and confidentiality as alleged above, Plaintiffs have suffered extreme embarrassment and humiliation, great emotional distress, mental anguish, loss of income, and loss of enjoyment of life.

## COUNT III
## GROSS NEGLIGENCE

\*                          \*                          \*

28. Plaintiffs allege that Defendants acted with gross negligence and carelessness by failing to employ the degree of care, skill and attention, as required of a reasonable and prudent person under the same or similar circumstances.

29. As a result of Defendants gross negligence, Plaintiffs have suffered extreme embarrassment and humiliation, great emotional distress, mental anguish, loss of income, and loss of enjoyment of life.

-5-

## COUNT IV
## LOSS OF CONSORTIUM

\*                          \*                          \*

31.  As a proximate and direct result of Defendants' actions as alleged above, Plaintiffs have suffered a loss of consortium, affection, society, and enjoyment of life with each other in their marital relationship.

## COUNT V
## INTENTIONAL INFLICTION
## OF EMOTIONAL DISTRESS

\*                          \*                          \*

33.  The acts and omissions of Defendants alleged herein caused Plaintiffs to suffer grievous injury and were so outrageous in character and extreme in degree as to constitute tortious intentional infliction of emotional distress.  As a result of Defendants' extreme and outrageous acts, Plaintiffs have suffered extreme embarrassment and humiliation, great emotional distress, mental anguish, loss of income, and loss of enjoyment of life.

## COUNT VI
## INVASION OF PRIVACY AND
## INTRUSION UPON SECLUSION

\*                          \*                          \*

35.  Plaintiffs reasonably expected that information known to Defendants, containing her positive HIV status, would remain private from her co-workers and any other persons.  As a result of Defendants' invasion of privacy and intrusion upon seclusion, Plaintiffs have suffered extreme embarrassment and humiliation, great emotional distress, mental anguish, loss of income, and loss of enjoyment of life.

## COUNT VII

-6-

## CONSTRUCTIVE DISCHARGE

\*                                    \*                                    \*

> 37. Plaintiff Jane Doe alleges that, as a proximate and direct result of Defendants' invasion of privacy and intrusion upon seclusion, breach of confidentiality, gross negligence, and infliction of emotional distress, *she was forced to terminate her employment, causing a loss of wages and employment.*[3]

(Italics in original).

Based upon the foregoing pleadings, Jane and John Doe sought compensatory and punitive damages. On October 6, 2008, and November 18, 2008, respectively, Appellees filed an original and amended answer to the complaint, wherein they denied the material allegations contained in the complaint and specifically raised the following, affirmative defenses: (1) the Does' complaint fails to state a claim upon which relief may be granted; (2) John Doe's claim, and any claims against Ms. Ghoston are barred by the statute of limitations pursuant to Tenn. Code Ann. § 28-3-104; and (3) the Does' complaint is barred by the exclusive remedy provisions of the Tennessee Workers' Compensation Act, Tenn. Code Ann. § 50-6-108.

On February 26, 2009, Appellees filed a motion to dismiss pursuant to Tenn. R. Civ. P. 12.02(6). In their motion, Appellees aver that "Plaintiffs' common-law Complaint is barred by the exclusive remedy provision of the Workers' Compensation Act, Tenn. Code Ann. § 50-6-108." Appellants filed a response to the motion which was heard on July 17, 2009. By order of July 24, 2009, the trial court granted Appellees' motion to dismiss, specifically finding that:

> Plaintiff does not allege any intentional acts on the part of the employer, that the acts alleged against Plaintiff's co-workers are not sufficient to take it outside of the workers' compensation law and that under Tennessee Code Annotated § 50-6-108,

---

[3] Although the incidents, giving rise to the appeal, occurred in 2004, the Complaint was not filed until 2008. No reason is given for this delay, nor did the trial court address any statute of limitations issue, nor is it an issue in this appeal.

workers compensation is Plaintiff's exclusive remedy.[4]

On August 24, 2009, Appellants filed a motion to alter or amend the judgment, which was denied by order of September 25, 2009. Appellants raise one issue for review as stated in their brief:

> Whether the factual allegations contained in Plaintiffs' complaint, if taken as true, describe injuries that are not covered by the workers' compensation statutes of Tennessee.

It is well settled that a Tenn. R. Civ. P. 12.02(6) motion to dismiss a complaint for failure to state a claim upon which relief can be granted tests the legal sufficiency of the complaint. It admits the truth of all relevant and material allegations, but asserts that such allegations do not constitute a cause of action as a matter of law. *See Riggs v. Burson*, 941 S.W.2d 44 (Tenn. 1997). When considering a motion to dismiss for failure to state a claim upon which relief can be granted, we are limited to an examination of the complaint alone. *See Wolcotts Fin. Serv., Inc. v. McReynolds*, 807 S.W.2d 708 (Tenn. Ct. App.1990). The basis for the motion is that the allegations in the complaint, when considered alone and taken as true, are insufficient to state a claim as a matter of law. *See Cornpropst v. Sloan*, 528 S.W.2d 188 (Tenn. 1975). In short, a Tenn. R. Civ. P. 12.02(6) motion to dismiss seeks only to determine whether the pleadings state a claim upon which relief can be granted, and such a motion challenges the legal sufficiency of the complaint, not the strength of the plaintiff's proof. *Bell ex rel. Snyder v. Icard*, 986 S.W.2d 550, 554 (Tenn. 1999). In considering such a motion, the court should construe the complaint liberally in favor of the plaintiff, taking all the allegations of fact therein as true. *See Cook ex. rel. Uithoven v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934 (Tenn. 1994). An appellate court should uphold the grant of a motion to dismiss only when it appears that the plaintiff can prove no set of facts in support of a claim that will entitle him or her to relief. *Young v. Barrow*,130 S.W.3d 59, 63 (Tenn. Ct. App. 2003).

---

[4] Tenn. Code Ann. § 50-6-108 provides, in pertinent part, as follows:

> **Exclusive rights and remedies; third party indemnity.**
> (a) The rights and remedies granted to an employee subject to this chapter, on account of personal injury or death by accident, including a minor whether lawfully or unlawfully employed, shall exclude all other rights and remedies of the employee, the employee's personal representative, dependents or next of kin, at common law or otherwise, on account of the injury or death.

The trial court dismissed the Does' case upon its finding that the alleged injuries sounded in workers' compensation, and that the Does' complaint failed to set out a *prima facie* case under the Tennessee Workers' Compensation Act, Tenn. Code Ann. § 50-6-101, *et seq.* (the "Act"). In order to recover benefits under the Act, an employee must prove that he or she has suffered an "injury by accident arising out of and in the course of employment." Tenn. Code Ann. § 50-6-102(12). An injury is considered to be "by accident" when it is "produced by an 'unusual combination of fortuitous circumstances.'" *Continental Ins. Co. v. Dowdy*, 560 S.W.2d 619, 621 (Tenn. 1978) (quoting *Brown Shoe Co. v. Reed*, 350 S.W.2d 65, 69 (Tenn. 1961)). An injury is deemed to arise out of the employment "when there is, apparent to the rational mind ... a causal connection between the conditions under which the work is... performed and the resulting injury, and [an injury] occurs in the course of one's employment if it occurs when an employee is performing a duty he was employed to do." *Fink v. Caudle*, 856 S.W.2d 952, 958 (Tenn. 1993) (citations omitted). In *Tindall v. Waring Park Ass'n*, 725 S.W.2d 935 (Tenn. 1987), our Supreme Court defined the "causal connection" required before an injury will be held compensable in workers' compensation:

> "[C]ausal connection" [does] not [mean] proximate cause as used in the law of negligence, but cause in the sense that the accident had its origin in the hazards to which the employment exposed the employee while doing his work. Although absolute certainty is not required for proof of causation, medical proof that the injury was caused in the course of the employee's work must not be speculative or so uncertain regarding the cause of the injury that attributing it to the plaintiff's employment would be an arbitrary determination or a mere possibility. If, upon undisputed proof, it is conjectural whether disability resulted from a cause operating within petitioner's employment, or a cause operating without employment, there can be no award. If, however, equivocal medical evidence combined with other evidence supports a finding of causation, such an inference may nevertheless be drawn by the trial court under the case law.

*Id*. at 937 (citations and internal quotation marks omitted).

While we concede that the Does' Complaint fails to set out a cause of action sounding in workers' compensation because it fails to allege that the Does' injuries were: (1) caused by an accident, which (2) arose out of, and (3) in the course of, Ms. Doe's employment with Walgreens, this finding does not necessarily negate any claims arising outside workers' compensation law. Having correctly determined that the Does' complaint fails to state a claim for workers' compensation, the trial court also stated that "the acts alleged against

Plaintiff's co-workers are not sufficient to take it outside of the workers' compensation law, and that, under Tennessee Code Annotated § 50-6-108, workers' compensation is Plaintiff's exclusive remedy." Here, we respectfully disagree with the trial court.

In reaching its conclusion that the Does' exclusive remedy lay in workers' compensation, the trial court inferentially determined that the injuries alleged arose out of and in the course of Ms. Doe's employment, and that the Does had failed to so plead. In *McAdams v. Canale*, 294 S.W.2d 696 (Tenn. 1956), our Supreme Court distinguished the phrases "arising out of employment," and "in the course of employment," as follows:

> "Rising out of employment" refers to the origin of the injury, while "in the course of employment" refers to the time, place and circumstances.... The injury received must arise "out of" the employment as well as "in the course of" employment.

*McAdams*, 294 S.W.2d at 699 (relying upon *Hendrix v. Franklin State Bank*, 290 S.W. 30 (Tenn. 1926); *Thornton v. RCA Service Co.,* 221 S.W.2d 954 (Tenn. 1949)). However, Tennessee law is clear that, if an employee suffers an accident in the course of employment, it does not necessarily follow that the injury arose out of his or her employment. *See Lennon Co. v. Ridge*, 412 S.W.2d 638, 644 (Tenn. 1967) (relying upon *Sandlin v. Gentry*, 300 S.W.2d 897 (Tenn. 1957)).

In *Knox v. Batson*, 399 S.W.2d 765 (Tenn. 1965), our Supreme Court denied recovery when construction workers died of asphyxiation caused by the leakage of gas from a heater in a motel room where the employees were staying. In *Knox*, the employees were given the option of commuting to the jobsite or finding accommodations nearer their work. The employees, on their own volition, decided to stay in the motel and, therefore, the lodging was not a direct incident to the employment. The lodging related "exclusively to the comfort and convenience of the employees, it being not so far removed from the fixed site of their daily work." *Id*. at 775. In so ruling, the Supreme Court quoted with approval the test laid out in *Free v. Indemnity Ins. Co.*, 145 S.W.2d 1026, 1028 (Tenn. 1941): "If the business of the master creates the necessity for the travel, the servant is in the course of his employment." In reaching its decision, the *Knox* Court stated, in relevant part, that:

> [T]he mere presence of the employee at the place of injury because of employment will not alone result in the injury being considered as arising out of the employment. Injury or death of an employee, to be compensable, must arise out of a risk peculiar to the employment. Injury or death of an employee from an exposure which is no more or different than that of any other

member of the public similarly situated in place and time is not compensable.

399 S.W.2d at 770 (relying upon *Scott v. Shinn*, 105 S.W.2d 103 (Tenn. 1937); *Thornton v. RCA Service Co.*, 221 S.W.2d 954 (Tenn. 1949); *Jackson v. Clark & Fay, Inc.*, 270 S.W.2d 389 (Tenn. 1954)).

However, as recently discussed by this Court, in *Coleman v. St. Thomas Hosp*., No. M2009-02526-COA-R10-CV, 2010 WL 3059159 (Tenn. Ct. App. Aug. 4, 2010) *perm. app. denied* (Tenn. Nov. 15, 2010), there is no bright-line rule for determining whether an injury arises out of and occurs in the course of employment, to wit:

> Various judicial "tests" and "doctrines" have emerged for determining when an injury arises out of and occurs in the course of employment, such as the "positional doctrine," the "peculiar hazard doctrine," the "foreseeability test," the "street-risk doctrine," and others. *See Bell*, 597 S.W.2d at 734. However, our Supreme Court has "consistently abstained from adopting any particular judicial test, doctrine, formula, or label that purports to 'clearly define the line between accidents and injuries which arise out of and in the course of employment [and] those which do not[.]'" *Wait*, 240 S.W.3d at 225 (quoting *Bell*, 597 S.W.2d at 734). The Court has repeatedly rejected "the use of artificial labels," stating that "classification and labeling is not the best method of determining whether an injury is compensable." *Hall v. Mason Dixon Lines, Inc.*, 743 S.W.2d 148, 151 (Tenn.1987). The Court has found it "difficult, perhaps impossible to compose a formula" which clearly defines those accidents resulting in compensable injuries. *Id.* As such, in Tennessee, "[t]here is no formula which will clearly define the line between accidents and injuries which arise out of and in the course of employment and those which do not." *DeBow v. First Inv. Prop., Inc.*, 623 S.W.2d 273, 275 (Tenn. 1981). Instead, "'each case must be decided with respect to its own attendant circumstances and not by resort to some formula.'" *Braden v. Sears, Roebuck & Co.*, 833 S.W.2d 496, 499 (Tenn. 1992) (quoting *Bell*, 597 S.W.2d at 734). As a result, "the standards employed by [the] Court in deciding whether accidents arise out of employment have led to diverse results." *Hudson v. Thurston Motor Lines, Inc*., 583 S.W.2d 597, 600 (Tenn.1979).

-11-

*Id*. at *3.

The Does argue that the alleged injuries stem from Ms. Doe's status as a customer of Walgreens, and that the injuries the Does sustained are no different from those injuries that could be suffered by any member of the public, whose prescription information is held in the Walgreens' database. Appellees contend that a customer of Walgreens could not sustain the particular injuries averred by the Does. Rather, because the Walgreens' database can only be accessed by Walgreens employees, on Walgreens' computers, at Walgreens' locations, Appellees argue that the alleged injuries arose out of Ms. Doe's employment, thus limiting her cause of action to workers' compensation.

Appellees first contend that Ms. Doe has failed to specifically plead her status as a customer of Walgreens. Concerning her status, the Complaint states, in relevant part, that: (1) "Doe was employed by Walgreens as a pharmacist technician;" (2) "Doe had her prescriptions filled at the Walgreens store located at 3177 S. Perkins, Memphis, Tennessee;" (3) Doe was enrolled as a...Tenn Care recipient for prescription medical care;" (4) "Walgreens accepted payment for Jane Doe's prescriptions from the [State]." Appellees argument that Jane Doe's Complaint fails to indicate her status as a customer of Walgreens is, in the opinion of this Court, too myopic in light of these sections of the Complaint. In the first instance, Appellees' argument fails to give the Does the reasonable inference of the foregoing averments. *Tigg v. Pirelli Tire Corp.*, 232 S.W.3d 28, 31 (Tenn. 2007). Without stretching the language of the complaint to an untenable point, if Ms. Doe had her prescriptions filled at Walgreens, and if Walgreens accepted payment for those prescriptions, the only reasonable inference we can draw from those statements is that Ms. Doe was a Walgreens' customer. Moreover, the Does' Complaint states that, "Walgreens...maintained a secure database open only to those employees who serviced...patients and customers and who had a business reason to know the [customers'] medical status." From this statement, we can reasonably infer that the sole reason for Walgreens (or its employees) to have access to Ms. Doe's prescription history was because she was a customer. If Ms. Doe had not been a customer of Walgreens (i.e., if she were only an employee of Walgreens), then her records would not be part of its database.

Appellees next argue that the Does' Complaint fails to specify that Appellees acted with the requisite intent necessary to remove their claims from the workers' compensation framework. As noted above, a workers' compensation claim requires an employee to prove that he or she has suffered an "injury *by accident* arising out of and in the course of employment." Tenn. Code Ann. § 50-6-102(12) (emphasis added). An injury is considered to be "by accident" when it is "produced by an unusual combination of fortuitous circumstances." *Continental Ins. Co. v. Dowdy*, 560 S.W.2d at 621 (citation omitted). However, a judicially created exception to the exclusive remedy requirement of workers'

compensation law exists where the employer can be said to have acted with the "actual intent" to injure the employee. ***Valencia v. Freeland & Lemm Const. Co.***, 108 S.W.3d 239 (Tenn. 2003). In ***Valencia***, our Supreme Court explained this exception:

> [W]orkers' compensation law provides the exclusive remedy for an employee who is injured during the course and scope of his employment, meaning the employee is precluded from seeking tort damages for the injury. ***Liberty Mut. Ins. Co. v. Stevenson***, 212 Tenn. 178, 368 S.W.2d 760 (1963).
>
> As have other jurisdictions, Tennessee courts have created an exception to the exclusivity provision for intentional torts committed by an employer against an employee; these torts give rise to a common-law tort action for damages. ***Mize v. Conagra, Inc.***, 734 S.W.2d 334, 336 (Tenn. Ct. App.1987) (Rule 11 permission to appeal denied)....The court in ***Mize*** explained the reason for this exception as:
>
>> Since the legal justification for the common-law action is the non-accidental character of the injury from the defendant employer's standpoint, the common law liability of the employer cannot be stretched to include accidental injuries caused by the gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of general intentional injury.... Even if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering claimant to perform an extremely dangerous job, wilfully and unlawfully violating a safety statute, this still falls short of the kind of actual intention to injure that robs the injury of accidental character. [ King,] 684 S.W.2d at 619.
>
>> ***Mize***, 734 S.W.2d at 336.... Further, proof of actual intent goes beyond that sufficient to prove gross negligence or even criminal negligence.

-13-

> *Gonzales v. Alman Constr. Co.*, 857 S.W.2d 42, 45 (Tenn. Ct. App. 1993) (Rule 11 permission to appeal denied).... While the traditional definition of intent used in tort law denotes the tortfeasor's desire to cause the consequences of his or her actions or the belief that the consequences are substantially certain to result from those actions, *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992), that definition is not applicable in workers' compensation cases. *Gonzales*, 857 S.W.2d at 45. Rather, the definition of actual intent is the actual intent to injure the employee. *King*, 684 S.W.2d at 619.

*Valencia*, 108 S.W.3d at 242-43 (some citations omitted).

Based upon the foregoing, Appellees argue that the Does' Complaint fails to specify that Appellees' actual intent was to injure Ms. Doe. We note that at no point in their Complaint, do the Does allege that the injuries occurred "by accident." Tenn. Code Ann. § 50-6-102(12). Rather, the Complaint clearly avers that the injury (i.e., the dissemination of Ms. Doe's HIV status, and the direct fallout therefrom) occurred as a result of Ms. Ghoston "deliberately access[ing] Walgreens' database," and as a result of Dr. Saxton's telephone call to Ms. Doe's fiancé. The Does aver that both of these actions were made "without medical or legal justification, and without [] being job related or a business necessity." As noted above, in reviewing a trial court's ruling on a motion to dismiss based on Rule 12.02(6), we must liberally construe the pleadings, presuming all factual allegations are true and drawing all reasonable inferences in favor of the complainant. *See Tigg*, 232 S.W.3d at 31; *see also Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 37 (Tenn. Ct. App. 2006). Based upon the foregoing factual allegations, we can reasonably infer that the alleged injuries arose from the deliberate acts of Dr. Saxton and Ms. Ghoston and not as a result of any accidental discovery or dissemination of Ms. Doe's prescription records. Further, because these deliberate acts lacked any medical, legal, business, or job related justification, it is reasonable to infer that they were made with the actual intent to injure the Appellants.

Appellees next argue that, but for Ms. Doe's status as an employee of Walgreens, she would not have sustained the alleged injuries. Specifically, Appellees contend that the injuries arose out of Ms. Doe's employment because the harmful information was obtained from the Walgreens' database, at the Walgreens location, and by employees of Walgreens (who would not have access to those records but for their status as Walgreens employees). It is true that there must be a causal connection between the conditions under which the work

-14-

is required to be performed and the resulting injury, in order to find that an injury "arises out of employment." *See **Phillips v. A & H Const. Co., Inc.***, 134 S.W.3d 145, 150 (Tenn. 2004). Essentially, a court must ask if the origin of the "accident" (here, disclosure of Ms. Doe's prescription information), is rooted in a hazard that the employer exposed the employee to while working. *See **Wilhelm v. Krogers***, 235 S.W.2d 122 (Tenn. 2008). Even if we assume, *arguendo*, that Appellees' argument is sound, it is Ms. Doe's co-worker's status as employees of Walgreens, rather than Ms. Doe's status as an Walgreens employee, that provided access to the database. In short, the ability to access Ms. Doe's prescription records was based upon the co-workers' being employees of Walgreens, a fact which, as pled in the Complaint, may implicate Walgreens on theories of "respondeat superior, [or] agency." However, the fact that it was Ms. Doe's records that were accessed does not hinge upon Ms. Doe being an employee of Walgreens; rather, it hinges upon her status as a customer, which is the reason her records were in the system at all. Although the fact that Ms. Doe was an employee of Walgreens may have provided the reason for her co-workers to access her information, this does not answer the question of whether Ms. Doe's injuries arise out of *her* employment. In so arguing, Appellees appear to overlook the fact that "the mere presence of the employee at the place of injury because of employment will not alone result in the injury being considered as arising out of the employment." ***Knox***, 399 S.W.2d at 770. Rather, in order to be compensable in workers' compensation, the injury must "arise out of a risk peculiar to the employment." ***Id***. If, however, the injuries sustained are no more or different than that of any other member of the public similarly situated in place and time, then the injuries are not compensable under workers' compensation law. ***Id***.

In arguing that the alleged injuries arose out of Ms. Doe's employment, Appellees assert that "[e]mployment with a pharmacy necessitates access by employees to confidential health information." While this general statement may be true, the question here is not whether a pharmacy employee must access confidential health information, it is whether the pharmacy employees, in this case, had a legitimate, work-related reason to access Ms. Doe's particular information. From the pleadings, the answer is no. Although the pharmacy workers at the Walgreens location on Perkins, where Ms. Doe actually had her prescriptions filled, would, necessarily, need access to Ms. Doe's records, there appears to be no business reason for Ms. Doe's co-workers at the Winchester location to access her prescription records. In the Complaint, the Does aver that Walgreens, in order "to protect the privacy of its HIV positive pharmacy patients and customers, maintained a secure database open only to those employees who serviced these particular patients and customers and who had a business reason to know the medical status of these individuals." The Complaint further states that her co-worker Ms. Ghoston deliberately accessed Ms. Doe's records, then disseminated the information "without medical or legal justification [and] without it being job related or a business necessity." Moreover, as concerns Dr. Saxton, the Complaint states that "without medical or legal justification, and without it being job related or a business

necessity, [Dr. Saxton] telephoned [Ms. Doe's] fiancé and informed him of [Ms. Doe's] HIV status."

In defending the grant of their motion to dismiss, Appellees rely upon the case of **Holder v. Wilson Sporting Goods Co.**, 723 S.W.2d 104 (Tenn. 1987). In **Holder**, our Supreme Court affirmed an award of workers' compensation benefits for an employee who slipped and fell in his employer's parking lot, while he was putting his lunch box in his vehicle after finishing a meal. **Id**. at 105-107. The Court reasoned that injuries sustained during personal breaks are compensable under workers' compensation law because it is reasonable to conclude that employees would take personal breaks during the course of the work day." **Id**. Based on **Holder**, Appellees argue that "it is reasonable to conclude that co-workers will discuss each other throughout the work day." However, Appellees reliance on **Holder** is misguided. **Holder**, which dealt with an accident that occurred during an on-premises lunch break, is different in kind from the case presented here, in which the injuries stem from the alleged intentional acts of co-workers. As noted above, an exception to the exclusive remedy requirements of workers' compensation law exists where the employer acts with the actual intent to injure the employee. **Valencia**, 108 S.W.3d at 242-43. Having found that the Does' alleged sufficient facts that Appellant acted with actual intent to injure, it would be incongruous for this Court to hold that such allegedly tortious acts must nevertheless be adjudicated under workers' compensation simply because it "it is reasonable to conclude that co-workers" will behave in such a manner. Because the Does' sufficiently alleged that Appellee's acted with the actual intent to injure, **Holder** does not apply to the facts of this case.

As discussed above, no employee of the Walgreens on Winchester had a business reason to access Ms. Doe's prescription records. However, taking the factual allegations contained in the Complaint as true, not only did her co-worker access this information unnecessarily, but she also disseminated the information to other employees. Moreover, Ms. Doe's supervisor, Dr. Saxton, phoned Ms. Doe's fiancé to spread the information further. Having determined that there was no business reason for the actions of Ms. Doe's co-workers and that, consequently, the injurious activities did not arise out of, or in the course of, Ms. Doe's employment, the causes of action averred do not sound in workers' compensation. Rather, Ms. Doe has sufficiently pled causes of action arising from her status as a customer of Walgreens.

For the foregoing reasons, we reverse the order of the trial court dismissing this case, and remand for such further proceedings as may be necessary and consistent with this Opinion. Costs of this appeal are assessed against the Appellees, Walgreens, Paris Ghoston, and Grady Saxton, for which execution may issue if necessary.

-16-

_____

J. STEVEN STAFFORD, JUDGE