**FILED**

**June 25, 2015**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time: 2:01 PM**



## COURT OF WORKERS' COMPENSATION CLAIMS
## DIVISION OF WORKERS' COMPENSATION

| | | |
|---|---|---|
| Sherry Hale, | ) | **DOCKET #: 2015-06-0150** |
| Employee, | ) | **STATE FILE #: 228154-2015** |
| v. | ) | **DATE OF INJURY: November 7, 2014** |
| Prime Package & Label, LLC | ) | **Chief Judge Switzer** |
| Employer, | ) | |
| and | ) | |
| Netherlands Insurance Co., | ) | |
| Insurance Carrier/TPA. | ) | |

## EXPEDITED HEARING ORDER

THIS CAUSE came before the undersigned Workers' Compensation Judge on June 15, 2015, upon the Request for Expedited Hearing filed by Sherry Hale (Ms. Hale), the Employee, on April 29, 2015, pursuant to Tennessee Code Annotated section 50-6-239 to determine if the Employer, Prime Package & Label, LLC (PPL) is obligated to provide medical and temporary disability benefits. Considering the positions of the parties, the applicable law, and all of the evidence submitted, the Court concludes that, at this time, Ms. Hale is eligible for further evaluation by Dr. Kaelin to render an opinion on causation to a reasonable degree of medical certainty. Her requests for additional relief are premature and, therefore, denied at this time.

## ANALYSIS

### Issues

■ *Whether Ms. Hale sustained an injury that arose primarily out of and in the course and scope of her employment with PPL.*[1]

---

[1] The parties agreed on the record that neither disputes whether Ms. Hale was injured while engaged in a significant deviation from her work duties, although this is checked as an issue on the Dispute Certification Notice (DCN). Further, the Mediating Specialist did not check "whether Employee sustained an injury that arose primarily out of and in the course and scope of employment with Employer" as an issue on the DCN, but checked "whether Employee sustained an injury in the course of employment with Employer." The parties agreed on the record that an issue for the Court to resolve is whether Ms. Hale sustained a compensable injury as defined within the 2014 Workers' Compensation Law.

- *Whether PPL is obligated to provide a panel of physicians upon notice from employee of an alleged injury.*

- *Whether PPL is obligated to pay past medical expenses and mileage.*

- *Whether Ms. Hale is entitled to any past or future temporary total or partial disability benefits and, if so, in what amount.*

**Evidence Submitted**

The Court admitted into evidence the exhibits below:

1. Medical Records of Sherry Hale, submitted by PPL (17 pages)
2. Supplemental Medical Records of Sherry Hale, Tennessee Sports Medicine, November 6, 2014-April 23, 2015 (Dr. Kaelin) (42 pages)
3. Medical bills:
     - SPT-Smyrna, physical therapy co-pays
     - Providence Surgery Center and MedDraft financing letter
     - Health & Wellness Compounding Pharmacy
     - Sam's Pharmacy
4. Mileage recap: Twelve (12) visits to Dr. Kaelin and physical therapy.

The Court designates the following as the technical record:

- Form C-23, Notice of Denial of Claim for Compensation, March 9, 2015
- Petition for Benefit Determination (PBD), March 19, 2015
- PPL position statement, claims adjuster, April 2, 2015
- Dispute Certification Notice, April 28, 2015
- Two Requests for Expedited Hearing, April 29 and 30, 2015 (The latter contains amended dates for hearing and no substantive differences)
- PPL's Pre-Hearing Statement for Compensation Determination, June 12, 2015.

The Court did not consider attachments to the above filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in the above filings or any attachments to them as allegations unless established by the evidence.

Ms. Hale provided in-person testimony. The parties stipulated that Ms. Hale's compensation rate is $306.82 per week.

2

## History of Claim

Ms. Hale is a fifty- (50) year-old resident of Davidson County, Tennessee. PBD, p. 1. She worked as a rewinder for PPL. *Id.* Ms. Hale tore her right shoulder rotator cuff. *Id.* Specifically, she alleged, in part, "In Oct[ober] I noticed a big difference in pain from tendonitis I ask (sic) my primary physician to please direct me to orthopedic to see what was going on/constant lifting pulling/cutting of rolls." *Id.* Ms. Hale did not describe her job duties in detail in her testimony, other than how pain affected her ability to work. Neither party introduced a written job description into evidence.

Several months prior to working for PPL, Ms. Hale saw Dr. Malcolm Baxter for right shoulder pain. *See generally* Ex. 1, pp. 1-3. His January 24, 2013 "assessment" indicated "rotator cuff tear, non-trauma." Ex. 1, p. 3. A January 28, 2013 MRI Report concluded, in part, "rotator cuff tendinosis without tendon tear," and, "probable small tear of the posterior labrum." Ex. 1, p. 4. On February 1, 2013, she returned to Dr. Baxter, who noted, "Her MRI demonstrates tendinitis with no rotator cuff tear." Ex. 1, p. 5. She testified that Dr. Baxter did not discuss a "probable labral tear" with her, but only told her about tendinitis.

Ms. Hale testified that when her employment began with PPL on October 23, 2013, she suffered from tendinitis in her right shoulder. According to Ms. Hale, she was "fully functioning" with her shoulder, and could not have performed her job duties otherwise. In April 2014, she experienced an increase in right shoulder pain, prompting her to seek medical care, specifically, a steroid injection. She did not introduce medical records documenting that visit.

Ms. Hale testified that, in October 2014, she began to experience a "totally different" pain in her right shoulder. She saw her primary care physician (PCP), who referred her to an orthopedic specialist, Dr. Charles Kaelin. Ms. Hale did not introduce medical records from the visit to her PCP.

Dr. Kaelin's November 6, 2014 notes state as "history," in relevant part:

> The pain occurred years (sic). The context of the pain: occurred with movement and in association with work. ... 49 year old healthy active right hand dominant Sherry Hale is here with a several year history of progressive pain in the right shoulder. ... She has a physically demanding job and she is having a hard time performing there because of the shoulder pain.

Ex. 2, p. 1. The November 7, 2014 MRI revealed "tendinosis" and "non-distracted tear of the posterior labrum." Ex. 2, p. 5. Ms. Hale testified, that on November 10, 2014, she

informed her immediate supervisor, Barry Nichols, and two others at PPL about the tear. PPL did not contradict this testimony. It also did not introduce evidence that it offered Ms. Hale a panel.

She continued to work for the next three weeks, but had difficulty "lifting rolls" due to pain. She stated, "[T]he rolls with the UV coating off of it – I would have to lean my shoulder up against the machine just to be able to pull it off. I mean, it was terrible. … Even slicing the rolls, I would have to hold it right there (pointing to her right shoulder)." During the fourth week after she reported the injury, PPL gave her "the heaviest rolls to do. … They call them 'five ups.' It doesn't -- You can't get no more wide across them steel spools. … I did bad quality work that week because I was in so much pain lifting them rolls." Ms. Hale's last day worked was December 3, 2014. She stated that she filed a claim under her private health insurance.

Dr. Kaelin surgically repaired the tear on December 5, 2014. Ex. 2, pp. 14-18. The postoperative diagnosis, in part, indicated a rotator cuff tear and labral tear. Ex. 2, p. 14. Ms. Hale continued to see Dr. Kaelin post-operatively. *See generally* Ex. 2, pp. 19-42. A March 26, 2015 "Medical Certificate" on a form provided by the Department of Employment Security asked, "Was the injury or condition caused by the individual's last period of employment?" Ex. 2, p. 41. Dr. Kaelin circled "Y." *Id.*

Ms. Hale testified on direct examination that the injury happened "somehow," but that she does not know how it occurred. She stated, without objection, that Dr. Kaelin indicated she currently needs additional treatment.

On cross-examination, Ms. Hale said she hurt her right shoulder before working at PPL when she fell in late 2012, while sleepwalking. She conceded that when she saw Dr. Kaelin initially, she told him the shoulder pain lasted for "years," but said that was incorrect. Ms. Hale explained, "When you have a pain, it's hard to say how long you've had a pain," and, "I'm not one to remember dates." She agreed there were no witnesses to the injury she alleged as work-related.

Ms. Hale conceded she does not know when she became injured, but testified that the pain from the tendinitis came from a different area of her shoulder than her alleged work injury. She testified, "All I know is the pain is completely different from tendinitis. Completely." The pain changed in October 2014, and Ms. Hale was "either at home or at work." She clarified, "I was working third shift. I was either trying to go to sleep or work," and, "I was either sleeping or pulling on paper. Trying to sleep. It's, uh, it was very hard to do either one."

PPL denied the claim on March 9, 2015. Ms. Hale filed a PBD on March 19, 2015. The mediator certified this matter to the Court on April 28, 2015.

4

## Ms. Hale's Contentions

Although Ms. Hale cannot recall whether she was working or sleeping when her pain changed, she argued that a person cannot sustain a rotator cuff tear while sleeping. She only had tendinitis in 2013 when her PPL employment began. There is no other way she could have sustained the injury other than through her employment with PPL.

## PPL's Contentions

It is undisputed that Ms. Hale has problems with her right shoulder and that she had shoulder problems prior to her employment with PPL. Ms. Hale cannot describe how she became injured, but can only state that it happened "somehow," or while she was "pulling rolls or when she was sleeping." Ms. Hale has not satisfied her burden of proof to show that her work at PPL caused the injury. Therefore, PPL properly denied the claim as non-compensable.

## Findings of Fact and Conclusions of Law

### Standard Applied

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). At an expedited hearing, an employee need not prove every element of his or her claim by a preponderance of the evidence in order to be eligible for benefits. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk Comp App Bd LEXIS 6, *7-8 (Tenn. Workers' Comp. App. Bd. March 27, 2015); *cf. McCall v. Nat'l Health Corp.*, 100 S.W.3d 209, 214 (Tenn. 2003). Instead, an employee must come forward with sufficient evidence from which the trial judge could conclude that the employee is likely to prevail at a hearing on the merits. *Id.*

### Factual Findings

Ms. Hale suffered from tendinitis in her right shoulder in 2013 when her PPL employment began. Ms. Hale began experiencing a different type of pain in her right shoulder in October 2014. Ms. Hale sought unauthorized medical care from Dr. Kaelin. The November 7, 2014 MRI revealed "tendinosis" and "non-distracted tear of the posterior labrum." Ms. Hale gave verbal notice of the injury to PPL on November 10, 2014. PPL failed to offer a panel of physicians. PPL denied the claim on March 9, 2015.

*At this time, Ms. Hale has established prima facie proof of an injury, but has not introduced sufficient proof of causation to establish that her injury is compensable.*

The Tennessee Workers' Compensation Law defines "injury" to include an "injury by accident ... *or cumulative trauma conditions ... or any other repetitive motion conditions,* arising primarily out of and in the course and scope of employment." Tenn. Code Ann. § 50-6-102(13) (2014) (emphasis added). An injury is "accidental" only if the injury "is caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence." Tenn. Code Ann. § 50-6-102(13)(A) (2014). An injury "arises primarily out of and in the course and scope of employment" only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes. Tenn. Code Ann. § 50-6-102(13)(B) (2014). An injury causes the need for medical treatment only if it has been shown to "a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(13)(C) (2014).

The Tennessee Supreme Court has consistently held that to qualify as a compensable workers' compensation claim, an injury must both "arise out of" and occur "in the course of" employment:

> The phrase "in the course of" refers to time, place, and circumstances, and "arising out of" refers to cause or origin. "[A]n injury by accident to an employee is in the course of employment if it occurred while he was performing a duty he was employed to do; and it is an injury arising out of employment if caused by a hazard incident to such employment." Generally, an injury arises out of and is in the course and scope of employment if it has a rational connection to the work and occurs while the employee is engaged in the duties of his employment.

*Cloyd v. Hartco Flooring Co.*, 274 S.W.3d 638, 643 (Tenn. 2008) (quoting *Orman v. Williams Sonoma, Inc.*, 803 S.W.2d 672, 676 (Tenn. 1991)).

In *Black v. Raytheon Eng'rs. & Constructors*[2], the Special Workers'

---

[2] In *Black,* the Special Workers' Compensation Panel cited two cases from the Tennessee Supreme Court that

Compensation Appeals Panel addressed gradual injuries as follows:

> Compensation can be awarded for conditions which do not occur instantaneously as a result of a single accident, but which develop gradually from repeated work-related instances, and the date of such accidental injury occurs when the plaintiff's condition reaches a point that he can no longer work at his job. *Barker v. Home-Crest Corp.,* 805 S.W.2d 373 (Tenn. 1991). When a condition gradually develops over a period of time, resulting in a definite, work-connected, unexpected fortuitous injury, it is compensable as an injury by accident. *Brown Shoe Company v. Reed, 209 Tenn. 106,* 350 S.W.2d 65 (1961).

*Black v. Raytheon Eng'rs. & Constructors,* No. E 1998-211-WC-R3-CV, 2000 Tenn. LEXIS 38, *6-7 (Tenn. Workers' Comp. Panel, Jan. 14, 2000).

In this case, PPL identified what it sees as two deficiencies with Ms. Hale's claim: 1) she had shoulder problems before starting employment with PPL; and, 2) she is unable to describe how she became injured, but can only state that it happened "somehow," or while she was "pulling on rolls or when she was sleeping." Its arguments overlook that Ms. Hale's injury might be gradual in its etiology.

In the instant case, the evidence to date is scant regarding causation. PPL is correct that no one disputes that Ms. Hale had right shoulder problems when her employment with PPL began. Nonetheless, Ms. Hale credibly testified that when she started at PPL, she was "fully functioning" with her right shoulder, but that in October 2014, she began to experience a "totally different" degree of pain, and that the pain originated from a different location in her right shoulder. A claimant's assessment of his or her physical condition is competent testimony and may not be disregarded. *Uptain Constr. Co. v. McClain,* 526 S.W.2d 458, 459 (Tenn. 1975). In her testimony, she credibly described the impact of pain upon performance of her job duties, supporting the inference that her injury might have developed gradually from repeated work-related instances. A rational connection exists between repeatedly lifting heavy rolls, ostensibly one of Ms. Hale's job duties, and sustaining a rotator cuff tear. Records from Dr. Kaelin, an unauthorized provider, documented her report that the pain "occurred with movement and in association with work," and that, "She has a physically demanding job and she is

---

remain good law. The Tennessee Workers' Compensation Appeals Board allows reliance on precedent from the Tennessee Supreme Court "unless it is evident that the Supreme Court's decision or rationale relied on a remedial interpretation of pre-July 1, 2014 statutes, that it relied on specific statutory language no longer contained in the Workers' Compensation Law, and/or that it relied on an analysis that has since been addressed by the general assembly through statutory amendments." *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk Comp App Bd LEXIS 6, *13 n.4 (Tenn. Workers' Comp. App. Bd. March 27, 2015).

having a hard time performing there because of the shoulder pain."

Several months later, on the "Medical Certificate," a form developed by a state agency other than the Division of Workers' Compensation, Dr. Kaelin unambiguously concluded that Ms. Hale's injury or condition was caused by her last period of employment. Significantly, there is no indication within his records that Dr. Kaelin reached his opinion to a reasonable degree of medical certainty that Ms. Hale's employment with PPL contributed more than fifty percent (50%) in causing her need for medical treatment, considering all causes, as the statute requires. *See* Tenn. Code Ann. § 50-6-102(13)(C) (2014). However, under the Appeals Board's standard announced in *McCord,* at this expedited hearing, Ms. Hale need not prove every element of her claim by a preponderance of the evidence in order to be eligible for benefits. *McCord at \*7-8.* Instead, she must come forward with sufficient evidence from which the trial judge could conclude that the employee is likely to prevail at a hearing on the merits. Ms. Hale has satisfied this burden.

The Court holds that, upon Ms. Hale giving notice of her injury, it was unnecessary for her to prove medical causation to a reasonable degree of medical certainty in order to receive temporary medical benefits, namely, a panel. Enforcing such a high burden at that stage of her claim would yield the unreasonable result of prohibiting Ms. Hale from receiving medical care for her rotator cuff tear without first securing an expert opinion on medical causation. Tennessee law requires an employer to provide "…free of charge to the employee such medical and surgical treatment…made reasonably necessary by accident as defined in this chapter[.]" Tenn. Code Ann. § 50-6-204(a)(1)(A) (2014). Ms. Hale has proven that she sustained an injury. At this point, the medical proof is unclear as to whether her work caused the injury. Ms. Hale has a right to a causation opinion.

The Tennessee Workers' Compensation Appeals Board outlined the procedure for compensability determinations under the Workers' Compensation Law in *McCord.* The Board, citing *Lindsey v. Strohs Companies,* 830 S.W.2d 899 (Tenn. 1992), quoted the Tennessee Supreme Court's explanation of the concomitant duties of the parties with respect to authorized medical treatment:

> …[A]n employer has a duty to furnish medical and surgical treatment reasonably necessary to treat a work-related injury. Under the same statute, the injured employee has a corresponding duty to accept the medical benefits provided by the employer, but only if the employer provides a list of three or more physicians or surgeons from which the employee has the privilege of selecting the operating surgeon or attending physician. …*[A]n employer who elects to deny a claim runs the risk that it will be held responsible for medical*

8

*benefits obtained from a medical provider of the employee's choice and/or that it may be subject to penalties for failure to provide a panel of physicians and/or benefits in a timely manner.*

*McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk Comp App Bd LEXIS 6, *13 (Tenn. Workers' Comp. App. Bd. March 27, 2015) (emphasis added).

The Board reminded the employer in *McCord* that the Division's Rules set forth "Claims Handling Standards," which require that decisions on workers' compensation coverage and compensability "shall be made within fifteen (15) days of verbal or written notice of accident." Tenn. Comp. R. & Regs., 0800-2-14-.04(7) (2015). Stated another way, "The statute and rules contemplate that an employer has an initial period of time following receipt of notice of a work accident, not to exceed fifteen days, within which it must investigate a claim and make a preliminary decision on compensability." *McCord at *12.*

In the normal course of events, this Court would order PPL to provide Ms. Hale with a panel of orthopedic specialists pursuant to this subdivision so that a specialist may provide an opinion on medical causation concerning the rotator cuff tear. However, common sense dictates that this Court designate Dr. Kaelin as the authorized treatment provider, given his lengthy treatment history and familiarity with Ms. Hale's condition. If Dr. Kaelin is able to opine to "a reasonable degree of medical certainty that it [Ms. Hale's work] contributed more than fifty percent (50%) in causing the ... need for medical treatment, considering all causes," PPL shall provide continuing, reasonable, necessary and related care. *See* Tenn. Code Ann. § 50-6-102(13)(C) (2014). With regard to past medical expenses, mileage and past and future temporary disability benefits, if medical causation is established, Ms. Hale may file another PBD with the Court in the event that the parties are unable to resolve her eligibility for those benefits.

As a final matter, PPL failed to introduce any evidence to contradict Ms. Hale's assertion that she provided notice of the injury on November 10, 2014. Likewise, there is no evidence of PPL's initial investigative efforts of her claim. PPL neither offered a panel nor denied her claim within fifteen (15) days of her verbal notice. Rather, the Notice of Denial of Claim is dated March 9, 2015. Upon this record, the Court finds insufficient evidence of a reason for PPL's belated denial of benefits on the ground of compensability. The "Claims Handling Standards" provide that, "In addition to other penalties provided by applicable law and regulation, violations of any of the above rules shall be subject to enforcement by Commissioner of the Tennessee Department of Labor pursuant to TCA §50-6-419(c)." Tenn. Comp R. & Regs., 0800-2-14-.08(1) (2015) Upon its issuance, a copy of this Order will be provided to the Penalty Program in accordance with Tenn. Comp. R. & Regs., 0800-02-24-.03 (2015) ("In addition to referrals made by a workers' compensation judge, any Division employee may refer any

9

person or entity to the penalty program for the assessment of a civil penalty whenever the referring employee believes that there may have been a violation of the Division's rules or the Tennessee Workers' Compensation Act."). The Court reasonably believes there may have been a violation of the Division's rules.

**IT IS, THEREFORE, ORDERED** as follows:

1. PPL or its workers' compensation carrier shall authorize an evaluation of Ms. Hale's condition by Dr. Kaelin so that he may opine whether it is his belief, to a reasonable degree of medical certainty, that Ms. Hale's work at PPL contributed more than fifty percent (50%) in causing her need for medical treatment, considering all causes. In the event medical causation is established, PPL shall provide continuing reasonable and necessary care under Dr. Kaelin's direction until such time as Ms. Hale either returns to work or attains Maximum Medical Improvement.

2. Ms. Hale's requests for additional medical and temporary disability benefits are denied at this time.

3. This matter is set for Initial Hearing on August 6, 2015, at 10:00 a.m.

4. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven (7) business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2014). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Division by email to WCCompliance.Program@tn.gov no later than the seventh (7th) business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

5. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED this the 25th day of June, 2015.**

**Kenneth M. Switzer, Chief Judge**
**Court of Workers' Compensation Claims**

10

<u>Initial Hearing</u>:

An Initial Hearing has been set with **Chief Judge Kenneth M. Switzer, Court of Workers' Compensation Claims. You must call 615-532-9552 or toll free at 866-943-0025 to participate in the Initial Hearing.**

**Please Note: <u>You must call in on the scheduled date/time to participate.</u> Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).**

<u>Right to Appeal</u>:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven (7) business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The parties, having the responsibility of ensuring a complete record on appeal, may request from the Court Clerk the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a statement of the evidence within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. The Judge must approve the statement of the evidence before the Clerk of Court shall submit the record to the Clerk of the Appeals Board.

5. If the appellant elects to file a position statement in support of the interlocutory appeal, the appealing party shall file such position statement with the Court Clerk within three (3) business days of the filing of the Expedited Hearing Notice of Appeal, specifying the issues presented for review and including any argument in support thereof. If the appellee elects to file a response in opposition to the interlocutory appeal, appellee shall do so within three (3) business days of the filing of the appellant's position statement.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 25th day of June, 2015.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|------|----------------|------------------|---------|------------|-----------|---------------|
| Sherry Hale, Employee | x | | | | x | Shale1865@gmail.com |
| Robyn Owens, Employer's attorney | | | | | x | robyn.owens@libertymutual.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

12