FILED
Jun 06, 2023
02:05 PM(CT)
TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Arlene Ernstes | ) | Docket No. 2020-07-0617 |
| | ) | |
| v. | ) | State File No. 66407-2020 |
| | ) | |
| Printpack, Inc., et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Amber E. Luttrell, Judge | ) | |

---

**Reversed and Certified as Final**

---

This is the second appeal of this case. It concerns an employee who asserted she suffered from noise-induced hearing loss caused by exposure to loud machinery over the course of thirty-three years of employment, which ended in 2016. The employer, in denying her claim, asserted the employee knew or reasonably should have known she had a work-related hearing loss, at the latest, when she was diagnosed in 2019 and that she failed to give proper notice of her alleged injury and failed to file her claim timely. Following a compensation hearing, the trial court found the employee's notice of injury was timely and that her claim was not barred by the statute of limitations, and it awarded permanent partial disability benefits, medical benefits made reasonably necessary by the employee's work-related hearing loss, and discretionary costs. In the first appeal, the employer challenged the trial court's determination that the employee had given timely notice of her alleged work injury. We concluded the employee had not provided timely notice, but we remanded the case for the trial court to make additional findings of fact regarding whether the employee had offered a reasonable excuse for her failure to give proper notice and whether the employer had suffered any prejudice caused by the lack of notice. In a subsequent compensation order, the trial court determined the employee had offered no reasonable excuse for her late notice but that the employer had likewise offered no evidence that it was prejudiced by the lack of timely notice. It therefore reiterated its original award in favor of the employee. The employer has appealed again. Upon careful review of the record, statutory language, and relevant precedent, we reverse the trial court's order and certify the reversed order as final.

Presiding Judge Timothy W. Conner delivered the opinion of the Appeals Board in which Judge Pele I. Godkin and Judge Meredith B. Weaver joined.

Gregory H. Fuller and Adam C. Brock-Dagnan, Knoxville, Tennessee, for the employer-appellant, Printpack, Inc.

Jeffrey Boyd, Jackson, Tennessee, for the employee-appellee, Arlene Ernstes

**Factual and Procedural Background**

In our opinion in the first appeal, we summarized the factual and procedural history of this case, in pertinent part, as follows:

> Arlene Ernstes ("Employee") worked for thirty-three years in various positions for Printpack, Inc. ("Employer") until 2016. Employee testified that she "did everything in the plant . . . [f]rom loading trucks to maintenance, cleaning the dyes, and everything." Most of her time at work was spent on the plant floor around loud machines, where, although Employee wore hearing protection, she testified that she could still hear loud noises. Employer performed annual hearing screens during her employment, but Employee testified she never received copies of her test results and never had the test results explained to her. Instead, Employee was provided notes in her mailbox at work indicating whether she passed or failed a test. She contended that noise exposure while working for Employer resulted in binaural hearing loss, with an effective date of injury of March 19, 2016, her last date of employment.[1]

> In December 2019, Employee was evaluated by Dr. Karl Studtmann, an ear, nose, and throat physician, and his physician's assistant at West Tennessee ENT Clinic. Employee testified that she saw Dr. Studtmann in 2019 for dizziness and ear pain. Medical records reflect Employee provided a history of "decreased hearing in both ears for many years now. She states that it has progressively gotten worse. She denies any sudden hearing changes or hearing worse in one ear than the other." Employee reported she had a sinus infection a few weeks prior to her visit and was told she had fluid in her ears. She had experienced "some mild dizziness upon standing" that would eventually pass and noted this had almost completely resolved. Employee was diagnosed with bilateral sensorineural hearing loss and referred to West Tennessee Speech and Hearing for consultation regarding hearing aid use. She was advised to return to the clinic if the dizziness returned or if she encountered any other issues.

---

[1] For purposes of this appeal, it is undisputed by the parties that Employee's only exposure to loud noises occurred while working for Employer on its premises.

2

Employee testified that she first noticed gradual hearing problems when she had to regularly turn up the volume on her television. Employee's granddaughters suggested she get hearing aids, and Employee stated that she thought her hearing issues were related to her age. Employee contended at trial that the first time she associated her hearing loss with her employment was while attending a meeting with her husband and his attorney in September 2020.[2] Following this meeting, Employee, through counsel, sent notice of her injury to Employer and, on November 17, 2020, Employee filed a petition for workers' compensation benefits.

. . . .

On November 17, 2021, the parties took Dr. Studtmann's deposition, during which he testified that, based upon Employee's history and her test results, Employee had "findings consistent with a noise-induced hearing loss and given that she has progression of that noise-induced hearing loss over that time period, it's likely related to noise exposure that she was receiving during that time period." Dr. Studtmann testified within a reasonable degree of medical certainty that this was the primary cause of Employee's hearing damage and that she would retain a ten percent impairment to the whole body.

*Ernstes v. Printpack, Inc.*, No. 2020-07-0617, 2022 TN Wrk. Comp. App. Bd. LEXIS 44, at *2-6 (Tenn. Workers' Comp. App. Bd. Dec. 15, 2022) (footnote 2 added).

Following the trial in August 2022, the trial court concluded Employee had given proper notice of her work-related hearing loss and had timely filed her claim. It awarded Employee permanent partial disability benefits, medical benefits, and discretionary costs. In its notice of appeal and brief, Employer challenged the trial court's determination that Employee had given proper notice of her work-related hearing loss. In our first opinion, we agreed, concluding that Employee had admitted she believed loud noises at work were the cause of her hearing loss as early as 2019 and, therefore, her notice to Employer in late 2020 was not timely. However, because the parties and the court did not address whether Employee had a reasonable excuse for the late notice and whether Employer had suffered any prejudice caused by Employee's late notice, we reversed in part and vacated in part the trial court's order, and we remanded the case for the court to consider the issues of reasonable excuse for her failure to provide timely notice and prejudice to the Employer.

---

[2] During cross-examination, however, Employee admitted that she believed in 2019 her hearing loss was caused by "all the loud noises."

Thereafter, the trial court issued a subsequent compensation order in which it concluded "[Employee's] claim for benefits is not barred by her failure to give proper notice of her injury." The court concluded that Employee had failed to establish any reasonable excuse for her failure to provide timely notice, but it also determined Employer did not prove any prejudice caused by the lack of proper notice. Employer has again appealed, asserting that the trial court failed to properly consider whether Employee's claim is barred by the expiration of the applicable statute of limitations and erred in again rejecting its notice defense.

**Standard of Review**

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2022). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2022).

**Analysis**

On appeal, Employer challenges the trial court's finding regarding the "reasonable excuse" element of the notice issue, and it asserts the trial court failed to properly address whether Employee's statute of limitations had expired. We elect to address those issues in reverse order.

*Statute of Limitations*

Tennessee Code Annotated section 50-6-203(b)(1) states as follows:

In instances when the employer has not paid workers' compensation benefits to or on behalf of the employee, the right to compensation . . . shall be forever barred, unless the notice required by § 50-6-201 is given to the

employer *and a petition for benefit determination is filed with the bureau . . . within one (1) year after the accident resulting in injury.*

(Emphasis added.) In the present case, Employer asserts that both we and the trial court "neglected to consider whether Employee's claim is barred by the statute of limitations." For two reasons, we conclude this argument is without merit.

First, the trial court did, in fact, address Employer's argument regarding the statute of limitations in its first compensation order. Specifically, the trial court noted that "[t]he discovery rule provides that the statute of limitations 'is suspended until by reasonable care and diligence it is discoverable and apparent that a compensable injury has been sustained.'" (Quoting *Linsey v. Acadia Healthcare Co. d/b/a Delta Medical Center-Memphis*, No. 2017-08-1276, 2019 TN Wrk. Comp. App. Bd. LEXIS 17, at *13 (Tenn. Workers' Comp. App. Bd. May 13, 2019)). The trial court then concluded, "[Employee's] [p]etition, filed within two months of her meeting with her attorney, is timely and not barred by the statute of limitations."

In its first appeal of this case, Employer did not challenge the trial court's determination regarding the statute of limitations. Instead, Employer focused its first appeal on notice, identifying the issue on appeal as "whether the trial court erred in concluding that Employee gave timely notice of her alleged hearing loss, as required by [Tennessee Code Annotated section] 50-6-201(b)." It also did not address the alleged expiration of the statute of limitations in its brief in the first appeal. Hence, Employer is inaccurate in asserting that the trial court failed to "properly consider" the statute of limitations issue in its original compensation order, and Employer did not raise the issue in its appeal of that order. Consequently, we conclude, as we did in the initial appeal, that the issue was waived.[3]

Second, even if we were to address the statute of limitations issue, we conclude Employer's argument is without merit. In our opinion in the first appeal of this case, we concluded that when Employee saw Dr. Studtmann in December 2019, Employee "knew, or reasonably should have known, that her hearing loss was permanent and was caused by noise exposure while working for Employer." Hence, in accordance with Tennessee's discovery rule, the preponderance of the evidence supports a finding that Employee's statute of limitations did not begin to run until the date of her evaluation by Dr. Studtmann in December 2019, and it is undisputed that Employee filed her petition for benefits within one year thereafter, in November 2020. As a result, we conclude the trial court did not err in determining that Employee complied with Tennessee Code Annotated

---

[3] In *Pope v. Nebco of Cleveland, Inc.*, 585 S.W.3d 874 (Tenn. Workers' Comp. Panel Jan. 16, 2018), counsel for the employee raised an issue for the first time during oral argument. The Supreme Court's Special Workers' Compensation Appeals Panel addressed the failure to raise an issue on appeal: "[B]ecause [Employee] did not raise this issue in the statement of issues on appeal in his brief, we deem the issue waived and decline to address it." *Id.* at 885 n.4.

5

section 50-6-203(b)(1) by filing her petition within one year of the date she knew or reasonably should have known she had suffered a compensable work injury.

In its brief on appeal, Employer argues that Employee knew or reasonably should have known that she had suffered work-related hearing loss *prior to* her appointment with Dr. Studtmann in December 2019 and, therefore, her statute of limitations began to run more than one year prior to the filing of her petition. In reviewing the record of this case, however, we find little evidence supporting such a finding. During Employer's cross-examination of Employee, she testified that her only exposure to loud noises was during her employment with Employer. She admitted that she noticed difficulty hearing beginning in approximately 2017 or 2018. However, she further testified that she did not believe her hearing loss was caused by exposure to loud noises until her appointment with Dr. Studtmann in December 2019. In short, we conclude the preponderance of the evidence supports a finding that Employee's statute of limitations was triggered in December 2019, and that her November 2020 petition for benefits was timely.

*History of the Notice Requirement*

Employer next argues that the trial court erred in rejecting its notice defense. We conclude that a resolution of the notice issue requires some discussion of the history of the relevant statutory provisions.

Tennessee's first Workers' Compensation Law, passed in 1919, included language that underlies the current dispute. Section 22 of the 1919 Act required every injured employee to "give or cause to be given to the employer written notice of the injury . . . unless it can be shown that the employer had actual knowledge of the accident." 1919 Tenn. Pub. Acts, Ch. 123, § 22. Section 23 of that law stated that an injured employee's notice must "state in plain and simple language" certain basic information about the work accident and must be signed by the claimant "or some person on his behalf." This section then provided: "But no defect or inaccuracy in the notice shall be a bar to compensation unless the employer can show to the satisfaction of the tribunal . . . that [it] was prejudiced by the failure to give proper notice and then only to the extent of such prejudice." 1919 Tenn. Pub. Acts, Ch. 123, § 23. Thus, from the very beginning of Tennessee's workers' compensation laws, the burden of proof was shifted to the employer to show prejudice when it affirmatively alleged a defect or inaccuracy in the injured employee's written notice.

In one of the first cases addressing this language, the Tennessee Supreme Court considered sections 22 and 23 of the 1919 Act in *Black Diamond Collieries v. Deal*, 234 S.W. 322 (Tenn. 1921). In that case, the Supreme Court concluded there was "very little room for construction of this language" and that "[i]ts meaning is quite plain." *Id.* at 322. In the Court's view:

Unless the employer has actual knowledge of the accident, the employee shall not be entitled to any compensation which may have accrued prior to written notice to the employer. Unless such written notice is given within thirty days after the occurrence of the accident[,] no compensation shall be payable . . . except [where] a reasonable excuse for failure to give the notice is made . . . . Such is the effect of section 22.

Section 23 relates to the form of the notice, but provides that a defective notice shall not be a bar to compensation unless the employer can show that [it] was thereby prejudiced . . . .

There must be written notice within thirty days, or there must be a satisfactory excuse. Otherwise[,] compensation cannot be enforced. To hold otherwise would be to disregard the provisions of the act.

*Id.* at 322-23. Hence, when the original notice provisions were considered by the Supreme Court in 1921, the Court distinguished between cases where no timely notice was given and no reasonable excuse was provided versus cases where defective notice was given and the employer was required to prove prejudice.

This same language remained undisturbed for decades. In 1955, the notice provisions were renumbered as sections 50-1001 and 50-1002, respectively. In 1984, the sections were renumbered again as sections 50-6-201 and 50-6-202. By 2012, the year before the General Assembly passed the Workers' Compensation Reform Act of 2013 ("Reform Act"), the structure of these sections had been expanded to include new provisions. Section 50-6-201(a) contained the basic notice requirement as stated in section 22 of the 1919 Act as quoted above. Section 50-6-201(b) was added in 2001 to address an injured employee's notice obligation in gradual injury or cumulative trauma cases. Section 50-6-202(a)(1) contained the language as expressed in section 23 of the 1919 Act regarding the contents of the notice, and section 50-6-202(a)(2) contained the "defect and prejudice" language noted above. Thus, prior to the passage of the Reform Act, the basic notice requirement was in one section of the law, but the language detailing the form and content of the written notice and the "defect and prejudice" language were in a separate section. *See* Tenn. Code Ann. §§ 50-6-201 & 202 (2012). From a structural standpoint, as further supported by the Supreme Court's opinion in *Black Diamond Collieries*, it appeared that the shifting of the burden of proof to the employer to show prejudice applied only in circumstances where the employer alleged a "defect or inaccuracy" in the written notice the injured employee had provided. However, there was no shifting of the burden of proof to show prejudice in circumstances where: (1) no timely notice had been provided; (2) no actual knowledge of the employer was proven; and (3) no reasonable excuse for lack of timely notice was shown.

7

When Tennessee's General Assembly passed the Reform Act in 2013, it changed the structure of the notice provisions. Now, instead of being in two separate sections, all notice provisions are contained in section 50-6-201. Significantly, subsection 201(a) is divided into three subparagraphs:

> (a)(1) Every injured employee or the injured employee's representative shall, immediately upon the occurrence of an injury, or as soon thereafter as is reasonable and practicable, give or cause to be given to the employer who has no actual notice, written notice of the injury, and the employee shall not be entitled to physician's fees or to any compensation that may have accrued under this chapter, from the date of the accident to the giving of notice, unless it can be shown that the employer had actual knowledge of the accident. No compensation shall be payable under this chapter, unless the written notice is given to the employer within fifteen (15) days after the occurrence of the accident, unless reasonable excuse for failure to give the notice is made to the satisfaction of the tribunal to which the claim for compensation may be presented.

> (2) The notice of the occurrence of an accident by the employee required to be given to the employer shall state in plain and simple language the name and address of the employee and the time, place, nature, and cause of the accident resulting in injury or death. The notice shall be signed by the claimant or by some person authorized to sign on the claimant's behalf, or by any one (1) or more of the claimant's dependents if the accident resulted in death to the employee.

> (3) No defect or inaccuracy in the notice shall be a bar to compensation, unless the employer can show, to the satisfaction of the workers' compensation judge before which the matter is pending, that the employer was prejudiced by the failure to give the proper notice, and then only to the extent of the prejudice.

Tenn. Code Ann. § 50-6-201 (2022).[4] Thereafter, subsection 201(b), which pertains to gradual injury and cumulative trauma cases, requires the injured worker to provide notice of a gradual injury within fifteen (15) days after the employee:

> (1) Knows or reasonably should know that the employee has suffered a work-related injury that has resulted in permanent physical impairment; or

---

[4] The Reform Act originally preserved the thirty-day notice requirement from pre-reform law, but the General Assembly amended these provisions again in 2016 to reduce the notice requirement from thirty days to fifteen days in all cases except occupational disease cases. *See* Tenn. Code Ann. § 50-6-305(a).

8

(2) Is rendered unable to continue to perform the employee's normal work activities as a result of the work-related injury and the employee knows or reasonably should know that the injury was caused by work-related activities.

Tenn. Code Ann. § 50-6-201(b).[5]  Although the General Assembly did not alter any of the language of section 202, it did alter the structure of the notice provisions.  Hence, we must now consider whether subsection 201(a)(3), which contains the "defect and prejudice" language, must be considered in every case where an injured employee fails to give timely notice as contemplated in subsection 201(a)(1).  Stated another way, the issue is whether lateness of notice is necessarily a "defect" as that term is used in section 201(a)(3) and, if so, whether the burden of proof shifts to the employer in every "late notice" case to show prejudice caused by the lateness of the employee's notice.[6]  Moreover, by moving the "defect and prejudice" language into subsection 201(a), and making it a subpart of the general notice provisions, we must also consider whether such language still applies in cases involving an alleged gradual injury or cumulative trauma, which is governed by section 201(b).

*Principles of Statutory Construction*

We previously addressed principles of statutory construction in *Thompson v. Comcast Corp.*, No. 2017-05-0639, 2018 TN Wrk. Comp. App. Bd. LEXIS 1, at *24 (Tenn. Workers' Comp. App. Bd. Jan. 30, 2018), as follows:

> When construing a statute, our goal is to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope.  We determine legislative intent from the natural and ordinary meaning of the statutory language within the context of the entire statute without any forced or subtle construction that would extend or limit the statute's meaning.  Further, Tennessee Code Annotated § 50-6-116 . . . provides that the workers' compensation statutes "shall not be remedially or liberally construed but shall be construed fairly, impartially, and in accordance with basic principles of statutory

---

[5] It is significant to note that from 2001 until the Reform Act was passed in 2013, section 50-6-202, which contained the "defect and prejudice" language and the burden-shifting mechanism, *followed* the language of section 201(b).  With the passage of the Reform Act, the "defect and prejudice" language and the burden-shifting mechanism, which was moved to section 201(a)(3), now *precedes* the language in section 201(b) governing gradual injuries and cumulative trauma conditions.  The wording of section 201(b) was not changed by the Reform Act.

[6] As a practical matter, there is *no litigated case* where written notice was never given.  The filing of a petition for benefits is, itself, notice to the employer of the employee's alleged work-related injury.  Thus, instead of speaking in terms of "no notice," we can only consider cases in terms of "late notice."

construction[,] and this chapter shall not be construed in a manner favoring either the employee or the employer." In addition, we must construe a statute so that no part will be inoperative, superfluous, void, or insignificant. We are required to give effect to every word, phrase, clause, and sentence of the act in order to achieve the Legislature's intent[,] and we must construe a statute so that no section will destroy another.

(Some internal citations and quotation marks omitted.) Moreover, if statutory language is ambiguous, we are directed to "look to the statutory scheme as a whole, as well as legislative history, to discern its meaning." *Carter v. Happy Trucking Co.*, No. M2004-00357-WC-R3-CV, 2005 Tenn. LEXIS 475, at *11-12 (Tenn. Workers' Comp. Panel May 17, 2005).

Tennessee's appellate courts have addressed the concept of statutory ambiguity in multiple cases, as recently summarized by the Tennessee Court of Appeals:

In determining whether statutory language is ambiguous, courts are not to put on blinders to *all* considerations outside the specific text in question. In all cases involving statutory construction, judges must look not only at the language of the statute, but also its subject matter, the object and reach of the statute, the wrong or evil which it seeks to remedy or prevent, and the purpose sought to be accomplished in its enactment. Furthermore, statutes should not be interpreted in isolation. The overall statutory framework must be considered, and statutes that relate to the same subject matter or have a common purpose must be read *in pari materia* so as to give the intended effect to both. Depending on the circumstances of a given case, consideration of the statute's purpose, its evolution over the course of time, and a longstanding interpretation by the affected parties may be needed to properly evaluate whether a proffered alternate interpretation is a nonsensical or clearly erroneous interpretation of a statute. As such, any initial perception on whether a statute appears ambiguous should not be used in a mechanistic manner that disregards interpretive information.

*In re Houston D.*, 660 S.W.3d 704, 714 (Tenn. Ct. App. 2022) (internal citations and quotation marks omitted). In addition, the legislature's act of retaining language *after* judicial interpretation of such language may suggest a finding of legislative acquiescence of such interpretation. *See, e.g.*, *Coffee Cty. Bd. of Educ. v. City of Tullahoma*, 574 S.W.3d 832, 848 (Tenn. 2019) (legislature's awareness of Attorney General opinions interpreting statutory language led to finding of legislative acquiescence); *Thompson v. Memphis City Sch. Bd. of Educ.*, 395 S.W.3d 616, 629 (Tenn. 2012) (legislature's "failure to express disapproval of a judicial construction of a statute" is persuasive evidence of legislative adoption of the judicial construction).

We conclude the structure and certain language of Tennessee Code Annotated section 50-6-201 are ambiguous. First, it is unclear whether the language now appearing in sections 201(a)(2) and 201(a)(3), which was applied to gradual injury claims prior to the effective date of the Reform Act, still applies to such claims given the changes made to the structure -- but not to the language -- of section 201. Second, it is unclear whether the term "defect" as used in subparagraph 201(a)(3) applies only to the contents of an employee's written notice, which is the interpretation supported by pre-reform cases from the Tennessee Supreme Court, or whether the lateness of that notice can constitute a "defect" that shifts the burden of proof to the employer to show prejudice. Consequently, we must look to legislative history, "the statutory scheme as a whole," relevant precedent, and other principles of statutory construction to discern the intent of the General Assembly.

*Gradual Injury and Cumulative Trauma Claims*

The Tennessee Supreme Court has recognized gradual injury and cumulative trauma claims since at least the 1960s. In *Brown Shoe Co. v. Reed*, 350 S.W.2d 65 (Tenn. 1961), the employee alleged he suffered a left arm injury "as a result of repeated movement of the left hand and arm . . . in the operation of a machine." *Id.* at 66. The employee was diagnosed with an ulnar nerve injury. *Id.* The trial court awarded benefits and the employer appealed, arguing there had been no compensable injury, the employee had not given notice of the alleged injury "until long after it happened," and "no suit was brought within a year from the happening of the injury." *Id.* at 68. The Supreme Court rejected each of these arguments. First, with respect to whether a cumulative trauma condition can be compensable under Tennessee's Workers' Compensation Law, the Court explained, "[I]t unquestionably appears from this proof that these repeated injuries to this nerve, no one of which resulted in disabling him, but the accumulation of which, resulted in substantial permanent disability to this arm." *Id.* The Court then concluded, "This repeated trauma to these nerves produced this injury." *Id.* at 69.

Second, the Court in *Reed* rejected the employer's notice and statute of limitations defenses. It cited Professor Larson's treatise in concluding that "the date of accident for gradual loss of use . . . was held to be the date on which this development finally prevented claimant from performing his work." *Id.* at 69-70. Thus, when the employee reported to the on-site first aid station and complained he was no longer able to perform his job functions due to his arm pain, "[t]his then amounted to the fact that the employer did have notice of the claimed injury." *Id.* Finally, in comparing gradual injuries to occupational diseases, the Court noted that "the statute of limitations commences to run when the accumulated effects of the latent disease culminate in a disability which is traceable to such disease as the primary cause and which is apparent to the employee or could have been discovered by the exercise of reasonable care and diligence." *Id.*

11

More recently, the Workers' Compensation Appeals Panel analyzed the issue of notice in a gradual injury case in *Peeler v. Kimberly-Clark Corp.*, No. E2001-00541-WC-R3-CV, 2002 Tenn. LEXIS 139 (Tenn. Workers' Comp. Panel Mar. 8, 2002). The employee in *Peeler* asserted she had suffered gradual injuries to both hands while operating a machine at work. *Id.* at *2. She suffered pain and swelling in her hands in 1998 and 1999 and was evaluated by a physician in April 1999. *Id.* at *3. That physician attributed her symptoms to non-work-related osteoarthritis. *Id.* The employee last worked for defendant in July 1999. *Id.* Then, in September 1999, the employee saw a rheumatologist, who later testified that he advised the employee at the first visit that her work activities had aggravated or contributed to her condition. *Id.* at *4. The trial court concluded the employee had not provided proper notice to her employer and had not offered any reasonable excuse for her failure to provide notice. *Id.* at *5.

On appeal, the Appeals Panel analyzed the notice issue:

> Our statute, Tenn. Code Ann. § 50-6-201, requires an employee to give written notice to the employer of a work-related injury unless the employer has actual notice of the injury. The notice must be given within 30 days after the accident or becoming reasonably aware of the injury unless a reasonable excuse exists for not complying with the rule.

> In determining whether an employee has shown a reasonable excuse for failure to give such notice, courts will consider the following criteria: (1) the employer's actual knowledge of the employee's injury, (2) lack of prejudice to the employer by an excusing of the requirement, and (3) the excuse or inability of the employee to timely notify the employer. Delay in asserting a compensable claim is reasonable and justified if the employee has limited understanding of his condition and his rights and duties under the Act.

> In cases of this nature, we find it is reasonable for a lay person to not be aware that a gradual injury may result in a compensable workers' compensation claim as opposed to an accident on-the-job causing an immediate injury. However, upon being examined by a physician and being told that work activities [are] causing, or aggravating or contributing to the employee's physical problems, a reasonable person would be on notice of a work-related injury.

*Id.* at *7-8 (internal citations omitted). Thus, prior to the 2001 amendment adding language in section 50-6-201 to address notice requirements in gradual injury and cumulative trauma cases, our appellate courts considered prejudice to the employer as an element of the "reasonable excuse" analysis and also considered whether the delay in providing notice (lateness) was justified under the particular circumstances of the case.

More recently, in *Jenkins v. Goodyear Tire & Rubber Co.*, No. W2014-02303-SC-R3-WC, 2016 Tenn. LEXIS 175 (Tenn. Workers' Comp. Panel Mar. 15, 2016), the Supreme Court's Special Workers' Compensation Appeals Panel addressed notice in a hearing loss case and explained as followed:

> We are persuaded . . . that the [Supreme] Court has not established an absolute rule that a doctor's opinion connecting an injury to the employee's work is the only factor that can be considered as the starting point for the statute of limitations. In the cases cited, the employee testified that he did not know that the injury was permanent and work related until the doctor advised him of his opinion. The Courts, therefore, cite the date of the medical opinion as the only conclusive proof of when the employee knew he had a work-related injury. In *Mayton v. Wackenhut Services*, [No. E2010-00907-WC-R3-WC, 2011 Tenn. LEXIS 620, at *14 (Tenn. Workers' Comp. Panel July 18, 2011),] the Panel recognized that other proof in the record could show that the statute began to run at an earlier date than the date of the doctor's opinion. In that case the Panel said:

> > Although employee argues that he cannot be found to have had knowledge that his illness was work-related until he received information from a doctor to that effect, he presents no authority providing that a doctor's diagnosis is required to establish that an employee has knowledge that his or her condition is work-related where evidence is presented showing that the employee has specifically stated that the condition is work-related.

> [*Id.* at *14.] We return, therefore, to the general rule stated in *Gerdau*: when, through the exercise of reasonable care and diligence, did it become discoverable and apparent that the employee sustained a compensable injury?

Id. at *8-9 (citing *Gerdau Ameristeel, Inc. v. Ratliff*, 368 S.W.3d 503 (Tenn. 2012)). We note the language quoted above because the same test informs our analysis of whether proper notice of the gradual injury was given in this case: When, through the exercise of reasonable care and diligence, did it become discoverable and apparent that Employee sustained a compensable injury?

Finally, it is clear that Tennessee's appellate courts consistently applied the pre-reform provisions of section 202 addressing defect and prejudice (now in subsections 201(a)(2)-(3)) to gradual injury cases. For example, in *Grayson v. Healthtrust, Inc.*, No. 01S01-9607-CH-00153, 1997 Tenn. LEXIS 502 (Tenn. Workers' Comp. Panel Oct. 21, 1997), the employee claimed she suffered from carpal tunnel syndrome. In addressing

13

whether the employee had provided proper notice of her alleged gradually-occurring injury, the Appeals Panel explained, "[We] must, therefore, determine whether or not the evidence preponderates against the trial court's finding that plaintiff failed to give notice of her work-related injury to her employer as required by Tenn. Code Ann. Sec. 50-6-201 and Sec. 50-6-202, and if there exists a reasonable excuse for not complying with the rule." *Id.* at *5; *see also Roberts v. Marco Printing Co.*, No. M1998-00197-WC-R3-CV, 1999 Tenn. LEXIS 673 (Tenn. Workers' Comp. Panel Dec. 20, 1999) (considering whether the employee offered a reasonable excuse for not giving timely written notice to the employer of his alleged gradual injury); *Riddle v. Murray Outdoor Prods.*, No. 02S01-9706-CH-00058, 1998 Tenn. LEXIS 108 (Tenn. Workers' Comp. Panel Mar. 3, 1998) (considering reasonable excuse and undue prejudice in gradual injury case); *Fisher v. Textron Aerostructures*, No. 01S01-9005-CH-00044, 1990 Tenn. LEXIS 426 (Tenn. Nov. 13, 1990) (general notice rules apply "whether the worker sustains a gradual injury or one from a single incident").[7]

*Reasonable Excuse for Failure to Provide Timely Notice*

As noted above, Employer contends the trial court erred in its analysis regarding notice.[8] We previously addressed the issue of notice in gradual injury cases in *Maples v. Federal-Mogul Corp.*, No. 2015-04-0039, 2016 TN Wrk. Comp. App. Bd. LEXIS 8 (Tenn. Workers' Comp. App. Bd. Feb. 17, 2016). There, the employee alleged she injured her hands due to repetitive work activities. *Id.* at *3. There was conflicting testimony as to when she first reported hand-related symptoms to a physician and when she first believed such symptoms were related to work activities. *Id.* at *4-5. The employee subsequently testified she informed her supervisor she could no longer work due to her hand pain on August 1, 2014. *Id.* at *7. It was not until November 2014, however, when the employee's orthopedic physician directly related her hand condition to her work activities, that she notified her employer that she wanted to file a workers' compensation claim. *Id.* at *12-13. The employee subsequently filed a petition for

---

[7] On this issue, there is relevant legislative history that supports our analysis. On March 26, 2013, in a hearing before the Tennessee Senate's Finance, Ways and Means Committee, then-Administrator of the Division of Workers' Compensation, Abigail Hudgens, was asked about the impact of the Reform Act on statutory notice provisions. Senator Jim Kyle asked, "So, in all the case law we have – if I was a practitioner – all the case law we have on notice to the employer is still good if this law passes? We're not changing any parts of that standard whatsoever?" Administrator Hudgens replied, "No, sir." Hearing on S.B. 0200 before the Senate Finance, Ways, and Means Comm., 108th Gen. Assemb. (Mar. 26, 2013) (statements of Sen. Jim Kyle and Administrator Abigail Hudgens).

[8] Employer's notice of appeal identifies one issue as "whether the court erred in determining that Employee provided a reasonable [missing word]." We infer Employer intended to add the word "excuse" after the word "reasonable." Even if that was the intended word, however, the trial court concluded Employee had *not* provided a reasonable excuse for her failure to give timely notice. Nevertheless, Employer's brief fairly raises the notice issue and challenges our previous cases interpreting the notice provisions of Tennessee's Workers' Compensation Law.

benefits in May 2015. *Id.* at *13. On appeal, we affirmed the trial court's determination that the employee had a reasonable excuse for her failure to give notice within thirty days of the date she stopped working. *Id.* at *24.

Subsequently, in *Simmons v. RHA/Trenton, Inc.*, No. 2016-07-0249, 2017 TN Wrk. Comp. App. Bd. LEXIS 10 (Tenn. Workers' Comp. App. Bd. Feb. 1, 2017), we addressed the analysis required when assessing whether an employee had a "reasonable excuse" for the failure to provide proper notice under Tennessee Code Annotated section 50-6-201(a). There, the employee alleged suffering a low back injury while assisting a patient. *Id.* at *2. He admitted that he did not provide notice of the accident to the employer that day; however, later that evening or early the next morning, the employee's wife called for an ambulance, and the employee was transported to a local emergency room due to low back pain. *Id.* Although the employee's wife texted the employee's supervisor later the next morning to advise the employer that the employee could not work that day, there was no evidence she advised the employer of a work-related accident at that time. *Id.* There was conflicting testimony as to when the employer was informed of the alleged work accident. *Id.* at *3.

In considering the issues of notice and reasonable excuse, we explained that the "appropriate analysis" was addressed in *Dorris v. Am. Limestone Co.*, No. M2002-00741-WC-R3-CV, 2003 Tenn. LEXIS 321 (Tenn. Workers' Comp. Panel Apr. 25, 2003):

> [N]o benefits are recoverable unless [the] written notice is given within 30 days after the injurious occurrence, unless the injured worker has a reasonable excuse for the failure to give the required notice. . . . Whether or not the excuse offered by an injured worker for failure to give timely notice is sufficient depends on the particular facts and circumstances of each case. The presence or absence of prejudice to the employer *is a proper consideration* . . . . In determining whether an employee has shown a reasonable excuse for failure to give such notice, courts will consider the following criteria in light of the . . . reasons for the rule: (1) the employer's actual knowledge of the employee's injury, (2) lack of prejudice to the employer by an excusal of the notice requirement, and (3) the excuse or inability of the employee to timely notify the employer.

*Id.* at *4-5 (emphasis added); *see also McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995) ("The reasons for the [notice] requirement are (1) to give the employer an opportunity to make an investigation while the facts are accessible, and (2) to enable the employer to provide timely and proper treatment for the injured employee."). We then concluded in *Simmons* as follows:

> [I]n circumstances where an employer alleges late notice in accordance with section 201(a)(1), prejudice or lack of prejudice to the employer is one

of the relevant considerations in assessing whether the employee offered a reasonable excuse for the late notice. Furthermore, in circumstances where an employer alleges defective or inaccurate notice in accordance with section 201(a)(3), the employer has the burden of proving the extent of any prejudice resulting from the employee's defective notice before any relief can be granted.

*Simmons*, 2017 TN Wrk. Comp. App. Bd. LEXIS 10, at *8.

Finally, in *Mitchell v. AECOM d/b/a Shimmick Construction, Inc.*, No. 2020-01-0494, 2021 TN Wrk. Comp. App. Bd. LEXIS 28 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2021), we affirmed a trial court's interlocutory order for medical benefits. In that case, the employer alleged the employee had failed to provide proper notice of a hand injury. *Id.* at *2. With respect to the issue of notice, the trial court determined that Employee had a reasonable excuse for his failure to provide notice prior to a certain medical appointment but that he had failed to give timely notice after being told at that medical appointment that the infection in his hand was caused by the work accident. *Id.* at *5-6. Nevertheless, because the employer had offered no evidence indicating it was prejudiced by the late notice, the trial court ordered additional medical benefits. *Id.* at *6-7. In affirming this determination, we stated as follows:

> While the presence or absence of prejudice to an employer is a factor to be considered in determining the reasonableness of an employee's excuse for not giving timely notice, *see McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995), section 50-6-201(a)(3) clearly places the burden on the employer to show "that the employer was prejudiced by the failure to give the proper notice[.]" Tenn. Code Ann. § 50-6-201(a)(3). Moreover, even if prejudice is shown, an employer is entitled to relief "only to the extent of the prejudice." *Id.*

*Id.* at *11.

In the present case, Employer asserts that we have improperly addressed the distinction between an employee's failure to give timely written notice as described in subsection 201(a)(1) versus a defect in the contents of the notice as described in subsections 201(a)(2) and 201(a)(3). In Employer's view, the failure of an injured employee to give timely written notice combined with the failure of the injured employee to prove a reasonable excuse for the lack of timely notice must result in a denial of the claim. Moreover, according to Employer's argument, to the extent that any of our prior opinions suggest that the burden of proof shifts to an employer in every "late notice" case to show prejudice to the employer caused by improper notice under subsection 201(a)(1), such opinions are incorrect. Conversely, Employee asserts that we have previously analyzed the issue correctly and should affirm the trial court's order.

16

*Conclusions of Law*

We conclude that, when the legislature moved the provisions of Tennessee Code Annotated section 50-6-202 to section 50-6-201(a), without altering the language itself, it expressed no specific intent to restrict the application of that language to all cases *other than* gradually-occurring or cumulative trauma injuries. Given that such language has been referenced and applied in gradual injury cases prior to the passage of the Reform Act, it would represent a significant change in the law to now conclude that such language no longer applies in gradual injury cases. Further, as noted above, at least one verbal exchange between a legislator and the Administrator during a committee hearing addressing the Reform Act evidences the intent *not* to change prior case law interpreting notice provisions as a result of the passage of the Reform Act.

In future cases, therefore, we conclude that trial courts evaluating the issue of notice should consider the following:

A. Did the employee provide timely written notice of the alleged work-related injury? *See* Tenn. Code Ann. § 50-6-201(a)(1).
B. If no timely written notice was provided, did the employer have "actual knowledge" of the alleged work-related accident or injury? *See* Tenn. Code Ann. § 50-6-201(a)(1).
C. If no timely written notice was provided and no actual knowledge has been proven, did the employee show a "reasonable excuse" for the failure to give proper notice to the employer? *See* Tenn. Code Ann. § 50-6-201(a)(1). In considering whether the employee has shown by a preponderance of the evidence a reasonable excuse, a court can consider, among other things: (1) the employer's actual knowledge of the employee's injury, (2) lack of prejudice to the employer by an excusal of the notice requirement, and (3) the excuse or inability of the employee to timely notify the employer. *See Dorris*, 2003 Tenn. LEXIS 321, at *4-5. However, as previously stated by the Tennessee Supreme Court, "[l]ack of prejudice alone would not be sufficient to excuse notice." *Aluminum Co. of Am. v. Rogers*, 364 S.W.2d 358, 361 (Tenn. 1962).
D. If the court determines that: (1) no timely written notice was provided; (2) the employer did not have actual knowledge of the alleged accident or injury; and (3) the employee did not prove a reasonable excuse for the failure to give timely notice, the claim should be denied and dismissed.
E. If written notice was provided, but the employer affirmatively asserts there was a defect or inaccuracy in the notice, the burden of proof shifts to the employer to prove actual prejudice it suffered as a result of the defective or inaccurate notice and, if such prejudice is found, the trial court can fashion a remedy, if appropriate, "only to the extent of the prejudice." *See* Tenn. Code Ann. §§ 50-6-201(a)(2), (3).

17

To the extent any of our prior opinions state or imply that the employer has the burden of proving prejudice in every case where lack of timely written notice is alleged, we clarify that the employee first has the burden of proving that: (1) timely written notice was provided; (2) the employer had actual knowledge of the accident or injury; or (3) the employee has a reasonable excuse for the failure to provide timely written notice. *See Fisher*, 1990 Tenn. LEXIS 426, at *8 ("The burden of proof is on the employee to show proper notice when this defense has been asserted by the employer."). It is when an employer affirmatively asserts a defect or inaccuracy in the written notice as described in subsections 201(a)(2)-(3) that the burden shifts to the employer to prove prejudice.

Here, on remand, the trial court concluded Employee had not shown by a preponderance of the evidence any reasonable excuse for her failure to give timely written notice of her alleged work-related hearing loss after her medical appointment with Dr. Studtmann in December 2019. Therefore, because no timely written notice was provided, no actual knowledge of the employer was shown, and no reasonable excuse was proven by a preponderance of the evidence, the claim should have been denied and dismissed. We therefore reverse the trial court's order and dismiss Employee's petition.

## Conclusion

For the foregoing reasons, we reverse the trial court's order awarding benefits and certify as final the trial court's compensation order as reversed. Costs on appeal are taxed to Employee.



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Arlene Ernstes | ) | Docket No.  2020-07-0617 |
| | ) | |
| v. | ) | State File No.  66407-2020 |
| | ) | |
| Printpack, Inc., et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Amber E. Luttrell, Judge | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 6th day of June, 2023.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| Adam C. Brock-Dagnan | | | | X | acbrock-dagnan@mijs.com ghfuller@mijs.com |
| Jeffrey P. Boyd | | | | X | jboyd@borenandboyd.com scallison@borenandboyd.com |
| Amber E. Luttrell, Judge | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |



Olivia Yearwood
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov